FILED
IN ... OFFICE

2004 OCT 15 P 4: 22

U.S. DISTRICT COURT
DISTRICT OF MASS

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

FIRST CIRCUIT                          DOCKET NUMBER:


WILLIAM RESTUCCI

(Petitioner)

VS,

SUFFOLK DISTRICT ATTORNEY FOR THE

COMMONWEALTH OF MASSACHUSETTS:

COMMONWEALTH OF MASSACHUSETTS TRIAL

AND APPELLATE COURTS, ET ALS

(Respondent's)


**PETITION FOR WRIT OF MANDAMUS**

**Parties**; Respondents, Suffolk District Attorney; Commonwealth
of Massachusetts Trial and Appellate Courts, et als.
Petitioner; William Restucci, pro se


**NATURE OF PROCEEDING**

The petitioner at bar petitions this Honorable Court in this
extraordinary circumstance were a failure of justice standard
applies to this case to be worthy to petition this Court for **Writ
of Mandamus** compelling the Suffolk District Attorney, 1 Bulfinch

2

place, Boston Massachusetts 02114 to supply the petitioner

William Restucci, PO Box 43, Norfolk Massachusetts 02056 with

certain discovery **named**; George Singleton Nero pathology test

results (see exhibits **F** through **J**) with full and complete

discovery in the case Commonwealth v, William Restuccci, Docket

94-11221, including all photo's in the same form and quality as

the originals.


## CAUSE, REASON, AND ISSUES SET FORTH

**Issues of exhaustion**; The petitioner petitioned the motion for

discovery as well as a Writ of Mandamus to final exhaustion in

the state Supreme Court. This can be seen in exhibits **B, C, D,**

**and E.**

**Prior proceedings**; The petitioner has petitioned state courts

(see exhibit **M, N, O**) as well as this Honorable Court (see

exhibit **P**) and the First Circuit United States Court of Appeals

(see exhibits **Q, R**) For a motion for a new trial, appeals of a

motion for a new trial, a Federal Habeas Corpus, and that appeal.

with no success. Petitioner has no available remedy which exist

to protect and serve the petitioners entitled rights to the

United States Constitution.

The petitioner was precluded to raise the issues of **Brady vs,**

**Maryland**, 373 U.S. 1194, 10 LEd.2d 215 (1963) because of the Writ

of Mandamus still pending in the Massachusetts Supreme Court for

the Commonwealth (see exhibits **C and D**), tobe perspective in sight, petitioner was unaware if he could or could not put the issues still pending in the state Supreme Court Mandamus in the Federal Habeas Corpus without first being adjudicated by the state Supreme Court first. Petitioner went to seek legal counsel in this situation but was denied (see exhibit **T**)

<u>ARGUMENT SET FORTH WITH REASON</u>

Petitioner was sentenced to 15 to 20 years in prison by Superior Court Judge Robert Banks (see exhibit **A**) for the charge of manslaughter to George Singleton on November 14 1995 by way of, as submitted, a corrupt guilty plea.

On the day of that guilty plea the petitioners defense Attorney Oliver Mitchell withheld vital information the would have led the petitioner to a different decision to go to trial and not to plead guilty.

**If the private pathalagist, Doctor Sussman and defense attorney did not deem the nero patholigy report extremely relevant to the case at bar they would have not been so persistent in getting it (see exhibits F, G, H, I, and J).** It is unquestionable that the prosecutor withheld vital information where this case involves a straight forward application of the rule in **<u>Brady vs, Maryland</u>**, 373 U.S. 83, 83 S Ct, 1194, 10 LEd.2d 215 (1963), a case

involving nondisclosure of material evidence by the prosecution
in response to certain request by defense (see exhibits F, G, H,
I, and J) holding in the BRADY rule was that suppression by the
prosecution of evidence favorable to the accused upon request
violates due process where evidence is material either to guilt
or punishment 373 U.S. at 87, 83 S Ct, at 1196. The Nero
patholagy report was withheld from the private patholagist who
was hired by defense counsel. Defense Counsel is an attorney not
a Doctor. Doctor Sussmans expert opinion was disregarded by
defense counsel. It is well proved that the same so called
diagnosis by the commonwealth medical examiner can mimic the same
cause of death with a drug and alcohol overdose. The deceased was
, as a matter of fact under the influences of high doses of drugs
and alcohol (Ethanol)(see exhibit K). **The petitioners guilty plea
on November 14 1995 can not be deemed considered intelligent or
voluntary.** The petitioner is entitled to make that decision with
full awareness of favorable material known to the government, or
in this case the Commonwealth; see **E,g, Tate vs, Wood**, 963 F.2d
20, 24 (2nd Cir 1992). Failure of defense counsel Mitchell to
investigate the only legal defense of the petitioner,defendant
William Restucci falls **beneath** the level of competence expected
of a defense attorney; see **Osborne vs, Commonwealth**, 378 Mass,
104, 111, 389 NE.2d 981 (1979); **Commonwealth vs, Cepulonis**, 9
Mass, App, Ct, 302, 305, 400 NE.2d 1299 (1980), this violated the

5

petitioners rights to the Fifth, Sixth, and Fourteenth Amendments
rights to the United States Constitution.
The petitioner has gone to the extreme of paying for the
information when he is indigent (see exhibit **E)** (The prosecutor
still has a continuing duty to reveal material exculpatory
evidence aquired before or after a conviction **Imbbler vs,**
**Pachman,** 424 U.S. 409, 427 (1976))

**In summation, The lower state courts opinion in this matter**
**(see exhibit C)** resulted in a decision that was contrary to, and
involved an unreasonable application of a clearly established
federal law, as determined by the Supreme Court of the United
States in **Brady vs, Maryland**, 373 U.S. 83, 83 S Ct, 1194, 10
LEd.2d 215 (1963)as clearly defined in the appellate brief in the
state supreme court (see exhibit **D**) and the decisions (see
exhibits **B, C, and D)** resulted in and was based on an
unreasonable determination of fact in light of the evidence
presented in the state court proceedings.

Wherefore, the petitioner prays that this Honorable Court
Grant this Writ of Mandamus and compel the sufffolk district
attorneys to supply the petitioner William Restucci, PO, Box 43,
Norfolk Massachusetts 02056 with certain discovery named George
Singleton nero patholigy report with full and complete discovery
in the case Commonwealth vs, William Restucci, docket 94-11221,

6

including all photo's in the same form and quality as the
originals at the commonwealth expense at once and or any other or
further relief that this Honorable court may seem just and proper
so that justice could be better served.

Dated 10 - 12 - 2004         Respectfully submitted by,

William Restucci pro se

PO. box 43, Norfolk

Massachusetts 02056



2

in the trial court -- where that new trial motion is pending --
and not in an appellate court.  Mass. R. Crim. P. 30, 378 Mass.
900 (1979), and as appearing in 435 Mass. 1501 (2001).  No
"failure of justice" is present in this case requiring
extraordinary relief.  See Stewart, petitioner, supra; McCastle,
petitioner, 401 Mass. 105, 107 (1987) ("the Legislature could
fairly conclude that it is in the best interests of a defendant,
as well as of the Commonwealth, that [a] rule 30 motion is heard
at the trial court level").

The single justice's decision denying relief in the nature
of mandamus is affirmed.

So ordered.

The case was submitted on briefs.
William Restucci, pro se.

COMMONWEALTH OF MASSACHUSETTS

SUPREME JUDICIAL COURT FOR

THE COMMONWEALTH

SUFFOLK, ss.                    DOCKET NO. S.J.C. - 08443

WILLIAM RESTUCCI

(PETITIONER/APPELLANT)

VS,

APPEALS COURT

(RESPONDENT)

---

Brief and Appendix as ordered (see iii) for appeal from

the lower courts decision denying the petitioner discovery

and or Petition for a Writ of Mandamus

---

DATE   AUGUST 28 2001


Superior court No. 94-11221

Appeals Court no. 2000-P-0604

                        Respectfully submitted by,


                        William Restucci / pro se

                        PO. Box 43, Norfolk,

                        Massachusetts 02056

pessimism

i

## TABLE OF CONTENTS

Pages

Statement of the case ......................... 1 - 2

Issues presented for review ................... 2 - 4

Statement of facts .,......................... 4 - 6

Argument ...................................... 6 - 10

Conclusion ................................... 10

Appendix ..................................... 11 -

## UNITED STATES CONSTITUTIONAL AMENDMENTS

First Amendment .............................. 4, 10

Fifth Amendment .............................. 10

Sixth Amendment .............................. 4 - 6 & 10

Fourteenth Amendment ......................... 4, 10

## TABLE OF AUTHORITIES

<u>United States vs, Agurs</u>, 427 U.S. 97, 103, 96
S Ct, 2392, 2397, 49 LEd.2d 342 (1976) ......... 6

<u>United States vs, Avellino</u>, 136 F.3d at 255 .... 7

<u>Brady vs, Maryland</u>, 373 U.S. 83, 83 S Ct, 1194,
10 LEd.2d 215 (1963) .......................... 6

<u>United States vs, Denson</u>, 603 F.2d 1143, 1146,
(5th cir 1979) (en banc) ...................... 9

<u>Department of mental retardation vs, Kendrew</u>,
418 Mass, 50, 53, 634 NE.2d 109 (1994) ......... 8

<u>Cf Habarek vs, Commonwealth</u>, 421 Mass, 1005
(1995) ........................................ 8

ii

Pages

Helstoski vs, Meanor, ___ U.S. ___, 99 S Ct,
2445, 61 LEd.2d 30 (1979) ..................... 9

Kerr vs, United States, 399 U.S. 394, 403, 96
S Ct, 2119, 48 LEd.2d 725 (1976) .............. 9

Mooney vs, Holohan, 294 U.S. 103, 55 S Ct, 340,
79 LEd. 791 (1935) ............................ 7

Will vs, United States, 389 U.S. 90, 88 S Ct,
269, 19 LEd.2d 305 (1967) ..................... 9

E. g., Tate vs, Wood, 963 F.2d 20, 24
(2nd cir 1992) ................................ 7

**Supreme Judicial Court for the Commonwealth of Massachusetts**
1412 Courthouse, Boston, Massachusetts 02108
(617) 557-1020

Mr. William Restucci
P.O. Box 43
Norfolk, MA 02056

RE:   Docket No. SJC-08443

      WILLIAM RESTUCCI
            v.
      APPEALS COURT

                    NOTICE OF DOCKET ENTRY


      Please take note that the following entry was made on the
docket of the above-referenced case:

July 9, 2001 - Letter from William Restucci: Question about the
Notice Proceeding Dismissal (relying on the filing of his
memorandum and appendix). (7/10/01:  Treating the within as a
motion for enlargement of time to file brief and appendix, the
same is ALLOWED.  Brief and appendix (original and 17 copies) to
be filed by 8/31/01.  NO FURTHER EXTENSIONS WILL BE ALLOWED.
Notice sent.)


                              Susan Mellen, Clerk



Dated: July 10, 2001

To:  Mr. William Restucci
     Pamela L. Hunt, A.A.G.

# Boston Police

DISTRICT/UNIT_____

From:- Police Officer William F. Kenney

To: A 906A Sgt. Robert Maffeo

Subject: Arrest Suspects Involved in A&B/DW

         at 466 Commercial Street

Sir,

At approximately 1:25 A.M. on the morning of July 21,1994 the A411A received a radio call to the above address; in regards to an Assault and Battery in progress. Upon arrival Officer Gill found an unknown w/m unconscious; bleeding from the head.

At this time Officer Gill gave out a description fo two white males, one wearing blue jeans and a black flowered shirt the other wearing jeans and an orange shirt.

Upon hearing the broadcast I started to search the area. At approximately 2:18 A.M. I observed two suspects that fit the description walking on Hanover street at North Bennett Street.  Upon stopping the suspects one  of which was later identified ss one William Restucci w/m of 19 Clark St,No end stated to me"I didn't do anything, why are you stopping me?"

The A101A with Officers Watts and Griffiths brought a witness to the scene one Arthur Mc Kenzie who had witnessed the assault; he immediately identified Mr. Restucci and the other suspect one Julio Nason w/m of 133 Eutaw st. E. Boston as the men who had assaulted the victim at 466 Commercial  Street. Suspects arrested at this time.     Respectfully submitted,

*William F. Kenney*
                                             Area A-1

## STATEMENT OF THE CASE

According to the commonwealth the facts are as follows;

On July 21 1994, the murder victim in this case George Singleton, joined a friend Mark Pettengill for a drink. Mark pettengill and Mr Singleton went to a bar located at 460 Commercial Street in the North End. That bar was called Labella's. Mr Singleton and Mr Pettengill were in the bar sharing a pitcher of beer. Sometime thereafter, approximately 1:00 am, Mr Singleton and Mr pettengill were approached by three men – William Restucci (Restucci), Julio Nason, and Eitan Grinspon. One of the men poured a glass of beer out of the pitcher and drank it down. Mr Singleton took exception to that action but did not get up. At that point Restucci and his (alleged) friends **left Labella's bar.** Mr Pettengill spoke to Mr Singleton and got up and went to the bathroom. Sometime when Mr Pettengill was in the bathroom, Mr Singleton **exited Labella's cafe some couple of minutes after the three men**, Restucci, Nason, and Grinspon exited the cafe. Mr Singleton approached Restucci and his (alleged) friends and made a comment about disrespecting his friend. ¶ The substance was that one of the men had taken some of **the** beer. At that point Mr Riley, a (alleged) witness, saw Restucci and his (alleged) friends begin to strike them with there fist. At that point, Mr Pettengill exited Labella's cafe to try to

2

assist his friend. He (allegedly) saw Restucci and the other
men punching Mr Singleton. Mr Riley continued to watch this,
and (allegedly) saw Mr Singleton being kicked repeatedly by
Restucci and his (alleged) friends. As Mr Pettengill
(allegedly) approached the group of three men Mr Grinspon
approached him with a **Knife. Mr Pettengill continued to
watch** as Restucci, and Nason (allegedly) kicked Mr Singleton.
As Mr Singleton went down on the ground Mr Grinspon backed
Mr Pettengill back into the bar. As Mr Riley (allegedly)
watched this he was joined bar another (alleged) witness, Art
McKenzie, also a security guard. Mr McKenzie, (allegedly)
witnessed Restucci and Nason striking Mr Singleton. After Mr
Pettengill was ordered off and back into the bar, Mr Riley
and Mr McKenzie crossed the street to intercede, as they did
Restucci and Nason took off running. Restucci and Nason were
subsequently stopped by another uniformed officer. At that
point uniformed **boston police officers took Mr Mckenzie to
the scene were he (allegedly) positively identified** Restucci
and Mr Nason as two of the people he had seen beating and
striking George Singleton. Mr Riley and Mr Pettengill also
(allegedly) identified Restucci and Nason. / emphasis added.

### ISSUES PRESENTED FOR REVIEW

The petitioner petitioned the Suffolk superior court

3

to compel the district attorney's office to send a copy of,
full and complete discover in criminal case 94-11221. On
12/27/00 J. Volterra denied that request (see exhibit A).
On May 31 2001 the full appeals court denied the appeal from
J. Volterra's decision on 12/27/00 (see exhibit B).
The petitioner also made a public records request to the
district attorney's office where he then paid for information
amounting to forty eight dollars in cost. 'Information that
was not restricted' (see exhibit C), this information proved
that the co defendant Julio Nasons blood was on the petitioners
cloths from the petitioner breaking up the fight (see exhibit
D), and apparently, none of the victims blood was on the
petitioners cloths. There was also information about who was
on the prosecutions witness list, which would have aided
the defense with exculpatory testimony. This information
is proof of an involuntary plea agreement because, if this
information was made available to the petitioner at the time
of the coercive acts, it would have hightoned petitioners
decision to go to trial and not take the plea bargain.

Nevertheless, the Massachusetts courts require clean cut
proof of innocents to require a reversal of a conviction
concerning a plea bargain. The lac of discovery prejudiced
the petitioner.

4

The petitioner is pro se in this matter and should be treated on the same level as a lawyer concerning discovery disclosures, " a lawyer would get full and complete discovery". The petitioner was prejudicially restrained from alleged restricted discovery that the district attorney has in there possession and refuses to present to William Restucci. This prejudicial factor precluded the petitioner William Restucci from presenting discovery to the courts which would have been exculpatory and material, the petitioner suffers violations of the First, Sixth, and Fourteenth Amendments guaranteed to all and the petitioner pursuant to the United states Constitution.

### STATEMENT OF FACTS

1) William Restucci asserts his complete innocents in Suffolk Superior Criminal case 94-11221.

2) The petitioner / defendant has petitioned the suffolk Superior Court for an order to aquire his discovery with no avail.

3) The criminal case number 94-11221 in the suffolk Superior Court should be vacated (see exhibit G) because the **petitioner did not willingly and freely offer the plea with full and complete discovery.**

4) The petitioner has no other alternative but to seek

5

a petition for a Writ of Mandamus to compel the lower courts

to comply with there official duties and order discovery

disclosures to the petitioner.

5) The district attorneys office has not disclosed

copies of full and complete discovery to the petitioner.

6) The petitioner requested and did not receive full and

complete discovery from ex - trial counsel Oliver Mitchell.

7) Although a guilty plea is generally considered

valid so long as the plea was intelligent and voluntary,

validity of the plea must be reassessed if it resulted from

impermissible conduct of state agents, including **Brady**

violations,

8) The petitioner is entitled to make a decision on

pleading guilty with full awareness of favorable material

evidence known to the prosecution.

9) The petitioner states, as a matter of fact, the Appeals

Court violated his Sixth Amendment pursuant to the United

States Constitution concerning the compulsory due process

clause because they failed to rule that the Suffolk Superior

Court abused there discretion and did error in the law denying

the petitioner his constitutional right to discovery

6

contemplated by the due process clause of the sixth amendment of the United States constitution.

10) The Writ of Mandamus is appropriate to compel the Massachusetts Appeals Court to do their duties required by law which they refuse to do.

## ARGUMENT

This case involves a straight forward application of the rule announced in <u>Brady vs, Maryland</u>, 373 U.S. 83, 83 S Ct, 1194, 10 LEd.2d 215 (1963) a case involving non disclosure of material evidence by the prosecution in response to specific request by defense (see exhibit C & F). Holding in the Brady rule was that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment 373 U.S. at 87, 83 S Ct, at 1196. The United States Supreme court noted in <u>United states vs, Agurs</u>, 427 U.S. 97, 103, 96 S Ct, 2392, 2397, 49 LEd.2d 342 (1976) that the Brady rule arguably might apply in three different situations involving the discovery, after trial, of evidence that had been known prior to trial to the prosecution but not the defense. The United States Supreme Court holding in Agurs was that the Brady rule applies in two situations but not the third. The two situations in which the rule applies are

7

those demonstrating the prosecution's knowing use of perjured
testimony, exemplified by <u>Mooney vs, Holohan</u>, 294 U.S. 103,
55 S Ct, 340, 79 LEd 791 (1935) **and the prosecution's
suppression of favorable evidence specifically requested by
the defendant** (se exhibit C & F) exemplified in Brady itself.
In both situations, the prosecutions nondisclosure constitutes
Constitutional error -- the conviction must be set aside if
the suppressed or perjured evidence was "material" and there
was "any reasonable likelihood" that it "could have affected"
the outcome of the trial 427 U.S. at 103, 96 S Ct, at 2397.

Although a guilty plea is generally considered valid so
long as the plea was intelligent and voluntary, validity of the
plea must be reassessed if it resulted from impermissible
conduct by state agents, including Brady violations <u>United
States vs, Avellino</u>, 136 F.3d at 255, the petitioner is
entitled to make that decision with full awareness of favorable
material evidence known to the government, see <u>E.g., Tate vs,
Wood</u>, 963 F.2d 20, 24 (2nd cir 1992).

**How could ex-trial counsel Oliver Mitchell,
effectively advise the petitioner / defendant to
plead guilty without full and complete discovery (see exhibit F) ?
AND**

8

**How could the petitioner / defendant plead guilty**

**knowingly and voluntarily without full and complete**

**discovery (see exhibits C & G) ?**

These questions are put before this court because the petitioner has no idea why the lower courts let his conviction stand. The petitioner is prejudiced, he only knows what he reads in the law books and that he is absolutely not guilty.

Ex-trial counsel oliver Mitchell did not examine the full discovery package and review it with the petitioner before any pre trial conference he was unprepared (see exhibit F). The right to counsel is the right to an adequately prepared lawyer see <u>Cf Habarek vs, Commonwealth</u>, 421 Mass, 1005 (1995).

**The Writ of Mandamus should be allowed**

**in the interest of the pursuance of**

**Justice so that Justice**

**could be better served**

The Supreme Judicial Court shall reverse a decision of a single Justice only when there is a clear abuse of discretion or error of law <u>Department of Mental retardation vs, Kendrew</u>, 418 Mass, 50, 53, 634 NE.2d 109 (1994): Here in this case at bar there exist both, an abuse of discretion, and an error of law.

9

The Writ of Mandamus should issue because the petitioner
does not have any other alternative, these are extraordinary
circumstances and the Mandamus is to be employed only in
extraordinary circumstances Helstoski vs, Meanor, ___ U.S. ___,
99 S Ct, 2445, 61 LEd.2d 30 (1979); United States vs, Denson,
603 F.2d 1143, 1146 (5th cir 1979)(en banc).
The Writ of Mandamus has been issued in the past to exact a
Trial courts preformance of its duty ..., Id at 1147, but only
when there is no other adequate means to obtain relief
Kerr vs, United states District Court, 399 U.S. 394, 403, 96
S Ct, 2119, 48 LEd.2d 725 (1976; Will vs, United States,
389 U.S. 90, 88 S Ct, 269, 19 LEd.2d 305 (1967).

     Reasons at bar why review of the trial courts decision
can not be adequately obtained obtained on appeal from any
final adverse judgement in the trial court or by other
available means and why the Writ of mandamus should be granted;

     1) Trial court refuses to preform there duties and order
the petitioner his lawfully disclosed discovery.

     2) The Appeals court refused and or neglects to order
the petitioner his lawfully disclosed discovery.

     3) Both courts are ignorant to the petitioners
constitutional right pursuant to the due process clause of the

NOV 14

        In obedience to the within warrant, I have conveyed the
within-named defendant to the Massachusetts Correctional Institution,
Cedar Junction, in the County of Norfolk, and delivered him to the
Superintendent thereof with a copy of this warrant.

                                    Deputy Sheriff
                                       of said
                                    County of Suffolk
                                    Officer of the Court
                                    within-named

414

NO. 94 - 1 1 2 2 1

MASSACHUSETTS CORRECTIONAL INSTITUTION
CEDAR JUNCTION

WARRANT

VS.

WILLIAM RESTUCCI

NOT MORE THAN    Twenty (20)    YEARS

NOT LESS THAN    Fifteen (15)    YEARS

Victim/witness fee of $50.00 Imposed

14 November    19 95

COPY

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

To the Sheriff of said County of Suffolk, his Deputies, the Officers hereinafter named and the Superintendent of the Massachusetts Correctional Institution, Cedar Junction, in the County of Norfolk;

GREETING:

Whereas, by the consideration of the Superior Court Department of the Trial Court for Criminal Business, holden at Boston within and for the County of Suffolk, on the     fourteenth      day of      November in the year of our Lord one thousand nine hundred and    ninety-five

WILLIAM RESTUCCI

now in the custody of the Sheriff of said County of Suffolk, convicted of the crime of

M A N S L A U G H T E R    (265-13)

for which crime the said        R Estucci                    was sentenced to be confined in the Massachusetts Correctional Institution, Cedar Junction, for a term of not more than   twenty (20)             years and not less than         fifteen (15)          years and to stand committed in pursuance of said sentence.        The Court in imposing sentence orders defendant be deemed to have served four hundred eighty five (485) days of said sentence in confinement awaiting disposition of this matter.
          Victim/witness fee of $ 50.00 Imposed

We therefore, command you, the said Sheriff, Deputies, and Officers of the Court, to remove the said       Restucci          from the Jail in Boston in the said County of Suffolk, to the Massachusetts Correctional Institution, Cedar Junction, in the said County of Norfolk; and we command you, the said Superintendent to receive the said       Restucci                  and immediately thereon to cause the said       Restucci                to be confined therein for a term of not more than   twenty (20)          years, and not less than    fifteen (15) years.

And so doing this shall be your warrant; and you the said Sheriffs and Officers are to make return of this warrant with your doings thereon to the Office of the Clerk/Magistrate of said Superior Court in Boston soon as may be.

WITNESS,      ROBERT A. MULLIGAN      , Chief      Justice of said Court and the seal thereof at Boston aforesaid, this       fourteenth     day of       November          in the year of our Lord nineteen hundred and ninety-five.

**A TRUE COPY**
ATTEST

M.C.I. CEDAR JUNCTION

Paul D. Nagle

ASSISTANT CLERK.



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                     SUPERIOR COURT DEPARTMENT

                                DOCKET NUMBER.94-11221

COMMONWEALTH

(PLAINTIFF)

VS,

WILLIAM RESTUCCI

(DEFENDANT)

## MOTION FOR DISCOVERY, PURSUANT TO RULE 30

## OF THE MASSACHUSETTS RULES OF CRIMINAL

## PROCEDURE (see Mass. P. Volume 30A, §2079)

## AND OR G.L. c. 66 § 10 (a)

The defendant in the above matter petitions this Honorable
court for discovery pursuant to rule 30 of the Massachusetts
rules of criminal procedure and or G.L. c. 66 § 10 (a).
The defendant petitions this court after he has petitioned
the single justice of the appeals court, the single justice
of the supreme judicial court, and the full supreme judicial
court. The full supreme judicial courts order stated that
the rule that the defendant petitioned the court with to be
inapplicable because he has not identified any interlocutory
ruling of the trial court as basis for his relief, see
exhibit B-1. The defendant at bar was under the impression

*[handwritten left margin: 12/27/00 Court refuses to act on this matter as it has previously decline to act on a Mass. Crim. R. 30 matter filed by Mr. Restucci.]*

*[handwritten: Justice signature]*

*[handwritten right margin: Denied see paper #64. signature, Justice 3/1/01]*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                          SUPERIOR COURT DEPARTMENT

                                      DOCKET NUMBER.94-11221

COMMONWEALTH

(PLAINTIFF)

VS,

WILLIAM RESTUCCI

(DEFENDANT)

## AFFIDAVIT IN SUPPORT OF MOTION FOR DISCOVERY

I, William Restucci do hereby depose and state,

1) I am the defendant in the above matter.

2) I reside at 21 Fox run, #2, Marshfield Massachusetts
presently being held against my will, unconstitutionally,
illegally, and unlawfully at M.C.I. Norfolk.

3) Oliver Mitchell jr, my lawyer at the time of the trial
and the alleged plea on november 14 1995 never ever told me
about any discovery or the fact that he did not receive the
complete discovery.

4) Oliver Mitchell fabricate lies about evidence that was
against me and i did not know why they had any evidence
against me in the first place.

5) The lack of discovery has made me suffer irremediable
prejudice in the case at bar.

6) Oliver Mitchell, the prosecutor, and Thomas Hrgan Esq,

2

conspired to force me, against my free will to plead guilty

because the prosecutor has no case against me, she would not

have had any type of conviction if not for defense attorney's

sham.

7) I swear to god under the pains and penalties of perjury

that I am not guilty of any crime concerning the case at bar.

8) I was denied my constitutional rights under the law in

this case at bar.

Signed under the pains and penalties of perjury on the date

of December 11 2000                    by William Restucci

William Restucci

21 Fox run #2,

Marshfield Mass, 02050

Return mailing address,

William Restucci

P.O. Box 43, Norfolk,

Massachusetts 02056

# COMMONWEALTH OF MASSACHUSETTS

### APPEALS COURT
### CLERK'S OFFICE
#### 1500 NEW COURT HOUSE
#### BOSTON, MASSACHUSETTS 02108
#### (617) 725-8106

May 31, 2001

William Restucci
MCI - Norfolk
P.O. Box 43
Norfolk, MA 02056

RE:     No. 2000-P-0604

> **COMMONWEALTH**
> **vs.**
> **WILLIAM RESTUCCI**

## NOTICE OF DOCKET ENTRY

    Please take note that, with respect to the Motion discovery
filed by William Restucci. (Paper #29),

on May 31, 2001, the following order was entered on the docket of
the above-referenced case:

RE#29 Revised Action. Denied. (GB G R). Notice..

                        Very truly yours,

                        The Clerk's Office

Dated: May 31, 2001

To:  Jane A. Sullivan, Esquire
     William Restucci



# Supreme Judicial Court for the Commonwealth of Massachusetts
### One Beacon Street, Third Floor, Boston, Massachusetts 02108
### (617) 557-1020


William Restucci
P.O. Box 43
Norfolk, MA 02056


RE:  No. SJC-08443

**WILLIAM RESTUCCI**
**v.**
**APPEALS COURT**


NOTICE OF DECISION


Enclosed please find a copy of the decision rendered by the
court in the above-captioned case.

Susan Mellen, Clerk


Dated: October 1, 2004

# COMMONWEALTH OF MASSACHUSETTS

## SUPREME JUDICIAL COURT FOR THE COMMONWEALTH

AT BOSTON,  October 1, 2004

IN THE CASE NO. SJC-08443

WILLIAM RESTUCCI

vs.

APPEALS COURT

pending in the___Supreme Judicial_____

Court for the County of_____Suffolk_____No. SJ-2000-0433

ORDERED, that the following entry be made in the docket; viz., --

The single justice's decision denying relief in the nature of mandamus is affirmed.

BY THE COURT,

*Susan Mellen*, CLERK.

*October 1, 2004*



SJC-08443

## WILLIAM RESTUCCI vs. APPEALS COURT.

### October 1, 2004.

Mandamus. Practice, Criminal, Discovery. Rules of Criminal Procedure.

     William Restucci appeals from an order of a single justice of this court denying, without a hearing, relief in the nature of mandamus.  Restucci sought an order from the single justice compelling the Appeals Court to allow a motion for discovery, pursuant to Mass. R. Crim. P. 30 (c) (4), 378 Mass. 900 (1979), that he had filed in the first instance in the Appeals Court in an appeal then pending before that court from a Superior Court judge's denial of his motion for a new trial (to withdraw his guilty plea).  A single justice of the Appeals Court previously had denied the discovery motion.  In the alternative, Restucci sought, from the single justice of this court, an order permitting him to appeal from the order of a single justice of the Appeals Court to a panel of that court.[1]  Our review of the decision of the single justice of this court is limited to determining whether he committed an abuse of discretion or other error of law.  See Levine v. Chief Justice of the Dist. Court Dep't of the Trial Court, 434 Mass. 1014 (2001); Hines, petitioner, 432 Mass. 1004 (2000); Forte v. Commonwealth, 429 Mass. 1019, 1020 (1999).  There was no error.

     Mandamus "will not issue to direct a judicial officer to make a particular decision or to review, or reverse, a decision made by a judicial officer on an issue properly before him or her."  Callahan v. Superior Court, 410 Mass. 1001, 1001 (1991), and cases cited.  The single justice therefore properly declined to compel the Appeals Court to allow Restucci's motion.  See id. See also Stewart, petitioner, 411 Mass. 566, 569 (1992) ("petitioner may not bring his rule 30 motion directly to this court, but rather must file it in the Superior Court"; "[h]is proper course now is to pursue his appeal from the denial of that motion in the Appeals Court").

     Moreover, mandamus is "extraordinary and may be granted only to prevent a failure of justice in instances where there is no alternative remedy."  Callahan v. Superior Court, supra, and cases cited.  Rule 30 contemplates that motions for discovery in connection with a new trial motion be filed in the first instance

---

     [1] The underlying appeal has been decided and the order denying the motion for a new trial was affirmed.  Commonwealth v. Restucci, 51 Mass. App. Ct. 1111 (2001).

motions.   Commonwealth v. Restucci, 46 Mass. App. Ct. 1110

(1999).  The defendant's first two motions to withdraw his guilty

plea also asserted, essentially, that his guilty plea was not

voluntary but, rather, was the product of coercion and duress.

   For the reasons stated in the Commonwealth's brief at pages

16-24, the motion judge properly declined to act on the

defendant's third motion to withdraw his guilty plea.  This

motion advances the same claim as his previous motions: that his

guilty plea was coerced and, as a consequence, involuntary.

Where the defendant has already argued this issue to a judge in

the trial court and to this court and where the issue has been

addressed and decided adversely to him at both levels, the motion

judge properly declined to act on the defendant's present motion

and we need not reach the merits of his appeal.  See Commonwealth

v. Matthews, 45 Mass. App. Ct. 444, 445 n.2 (1998)("[a]ny issues

raised in the defendant's previous motions for a new trial or in

his appeal are, of course, barred by the prior adjudications").

   In sum, we conclude that the motion judge did not err in

refusing to act on the defendant's third motion to withdraw his guilty plea.

<u>Order denying motion for a new trial affirmed</u>.

By the Court (Greenberg, Gillerman, & Rapoza, JJ.),

Ashley Ahearn
Clerk

Entered: May 31, 2001.

3

# Supreme Judicial Court for the Commonwealth of Massachusetts

**1412 Courthouse, Boston, Massachusetts 02108**
**(617) 557-1020**


William Restucci
MCI - Norfolk
P.O. Box 43
Norfolk, MA 02056


RE:  Docket No. FAR-12121

**COMMONWEALTH**
          **vs.**
**WILLIAM RESTUCCI**


### NOTICE OF DENIAL OF F.A.R. APPLICATION

Please take note that the above-captioned Application for Further Appellate Review has been considered by the Court and is denied.

                              Susan Mellen, Clerk


Dated: September 27, 2001

To:  Jane A. Sullivan, Esquire
     William Restucci

P
=

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
WILLIAM RESTUCCI,                   )
                                    )
              Petitioner,           )
                                    )  CIVIL ACTION
        v.                          )  NO.  01-11693-WGY
                                    )
LUIS SPENCER,                       )
                                    )
              Respondents.          )
                                    )
```

JUDGMENT

YOUNG, C.J.                                    March 7, 2003

    For the reasons set forth in the Memorandum and Order dated
March 6, 2003, Restucci's petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254 [Docket No. 4] is Denied.


                            *Elizabeth Smith (meb)*
                        Elizabeth Smith, Deputy Clerk



Approved as to form:    *William G. Young*
                        WILLIAM G. YOUNG
                        CHIEF JUDGE


                                    DOCKETED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM RESTUCCI,           )
                            )
        Petitioner,         )
                            )
        v.                  )    CIVIL ACTION
                            )    NO. 01-11693-WGY
LUIS SPENCER,               )
                            )
        Respondent.         )
_____)

MEMORANDUM AND ORDER

YOUNG, C.J.                                    March 6, 2003

        Petitioner William Restucci ("Restucci") has brought a pro
se petition for habeas relief pursuant to 28 U.S.C. § 2254.
Construing his petition liberally, as the Court must, Restucci's
claims are threefold: 1) he argues that his guilty plea to
manslaughter was not knowing, intelligent, and voluntary; 2) he
submits that his lawyer's performance constituted ineffective
assistance of counsel at the plea phase; and 3) he argues that
the state court abused its discretion when it did not grant his
motion to sever the co-defendant (who also pled guilty) from his
trial.

I.    BACKGROUND

        On November 14, 1995, Restucci pled guilty to voluntary
manslaughter before the Massachusetts Superior Court sitting in
and for the County of Suffolk.  He was sentenced to not less than

**DOCKETED**

37

fifteen nor more than twenty years in custody.  An exposition of
the facts of the case underlying this plea, how the plea was
taken, the procedural history of Restucci's appeals since he was
sentenced, and the purported basis of his claims for habeas
relief follows.

### A.    The Crime

The grand jury testimony excerpts, police reports, and the
remarks of the prosecutor as to what the Commonwealth was
prepared to prove (made at Restucci's plea colloquy), paint a
picture of a man savagely beaten and kicked to death by three
assailants.

On July 21, 1994, George Singleton ("Singleton"), the
victim, and his friend, Mark Pettengill, ("Pettengill"), went to
LaBella's, a bar in the North End section of Boston.  Resp't List
of Exhibits [Docket No. 32], Ex. 2, Tr. of Plea Colloquy at 9.
At the bar, the bartender informed one of the patrons, Julio
Nason ("Nason"), that he would not be served more alcohol because
of his boisterous behavior.  Id., Ex. 3, Grand Jury Proceedings
at 21.

Angry that he had been refused service, Nason approached
Pettengill's and Singleton's table as he was leaving the bar, and
his friends, Restucci and Eitan Grinspon ("Grinspon"), followed
him.  Id., Ex. 2 at 9.  At this point, Nason, uninvited, took
Petengill's and Singleton's pitcher of beer, poured a glass out

of it, and drank it. _Id._ Singleton, while offended, apparently remained silent. _Id._ Nason then left the bar, accompanied by Restucci and Grinspon. _Id._

The manager of LaBella, Michael Goss ("Goss"), and Pettengill counseled Singleton to forget about the affair, saying it was not worth a fight. _Id._, Ex. 3 at 22. Pettengill then went to the restroom. _Id._, Ex. 2 at 9. After his friend was inside the restroom, Singleton apparently decided to go outside and confront Nason. _Id._, Ex. 2 at 10.

A security guard, Michael Riley ("Riley"), was changing a flat tire across the street from the bar. _Id._, Ex. 3 at 39. Riley noticed Nason, Restucci, and Grinspon immediately because one was boisterous as they left the bar, and one conversed with a man who was passing by on a bicycle. _Id._, Ex. 2 at 10. Then Riley saw Singleton come out of the bar. _Id._, Ex. 2 at 11.

According to Riley, Singleton approached Nason and accused him of disrespect. _Id._, Ex. 3 at 41. At this point, Nason, Restucci, and Grinspon attacked Singleton. _Id._ According to Riley, Singleton attempted to retreat and stated he did not want any trouble, but the attackers persisted. _Id._ at 42. Riley testified that, despite Singleton's protestations, the three men repeatedly punched and kicked Singleton about the head and body. _Id._

3

At some point during the attack, Pettengill emerged from the bar and attempted to assist his friend. Id., Ex. 2 at 11. As Pettengill approached, Grinspon brandished a knife, threatened Pettengill, and ordered him to back away. Id. Pettengill retreated to the bar and the police were summoned. Id.

Arthur McKenzie ("McKenzie"), another security guard who had been called to assist Riley with his vehicle, arrived on the scene to help change the flat tire. Id., Ex. 3 at 43. Riley and McKenzie then crossed the street to help. Id. Upon seeing McKenzie, clad in a security guard uniform, Nason and Restucci fled. Id., Ex. 2 at 12. Grinspon remained and told McKenzie and Riley that Singleton had initiated the altercation. Id., Ex. 3 at 44.

The police arrived on the scene shortly thereafter and quickly apprehended Nason and Restucci. Id., Ex. 2 at 12. Riley, McKenzie, and Pettengill positively identified Restucci as an assailant in the attack. Id. at 12-13. Paramedics were unable to revive Singleton and he was pronounced dead. Id. at 13.

**B.    The Trial Court Proceedings and Petitioner's Guilty Plea**

Restucci and Nason were jointly charged with first degree murder as co-venturers and were set to be tried together. Restucci moved on the eve of trial to sever his case from Nason's, but the motion was denied. Id., Ex. 1, Docket Sheets at

4

4.  On November 14, 1995, after a jury had been empaneled and a
motion to suppress evidence had been denied, Restucci and Nason
pled guilty to manslaughter in the first degree before Judge
Robert Banks, and Restucci was sentenced.  Id., Ex. 2 at 24.

Before considering their offers to plead guilty, Judge Banks
asked both men their names, addresses, places of birth, and how
far each had gone in school.  Id., Ex. 2 at 3-4.  Restucci stated
that he had attended school up to the tenth grade.  Id., Ex. 2 at
4.  Restucci responded affirmatively when asked whether he could
read, write, and understand English, and he stated that he was
not suffering from any mental defect or under the influence of
alcohol or drugs.  Id.  Restucci acknowledged that he was charged
with murder, that the government alleged that he had beaten
Singleton with intent to murder him, that, by doing so, he did
kill and murder him, and that he was "offering to plead guilty to
so much of that offense that encompasse[d] manslaughter."  Id.,
Ex. 2 at 4-5.  Judge Banks informed Restucci of his rights to a
trial by jury or judge and told him that, by pleading guilty, he
was waiving these rights, as well as the right to confront his
accusers and the witnesses against him.  Id., Ex. 2 at 6.  The
judge further advised Restucci that he was waiving his right
against self-incrimination and the right to appeal adverse
rulings on suppression motions.  Id., Ex. 2 at 7.  Restucci
responded that he understood each of the judge's warnings.  Id.,

5

Ex. 2 at 8.  Restucci was asked if he wanted to plead guilty, and

he responded "yes."  Id.  When the clerk read the indictment and

asked him his plea, Restucci replied, "Guilty."  Id.

Restucci was then asked by the court to listen to the

government regarding the facts and to "determine whether or not

[he] agree[d] with what [the Assistant District Attorney

("A.D.A.")] ha[d] to say and whether or not [he admitted his]

guilt . . . ."  Id. at 8-9.  After the government's allocution,

Judge Banks asked Restucci if he had heard what the A.D.A. had

said.  Id., Ex. 2 at 14.  Restucci responded affirmatively, and

agreed that what had been stated to the court was true.  Id.  He

acknowledged his participation in the beating of Singleton and

admitted he was guilty of manslaughter.  Id.  At this point the

trial judge inquired as to the voluntariness of Restucci's plea:

> Q (Judge Banks): Are you pleading guilty freely, willingly
> and voluntarily?
> A:(Restucci) Yes.
>
> Q: Has anyone forced you to plead guilty?
> A: No.
>
> Q: Have any threats been made which required you to plead
> guilty?
> A: No.
>
> Q: Have you been coerced in any way into pleading guilty?
> A: No.
>
> Q: Any promises been made which induced you to plead guilty?
> A: No.
>
> Q: Are you pleading guilty because you are guilty and for no
> other reason?

A: Yes.

Q: Have you had sufficient time to fully and completely discuss this case with your attorney and have you had explained to you all of the elements of the offense that you're pleading guilty to and the requirement of the Commonwealth to prove its case beyond reasonable doubt and all of the alternatives to pleading that are available? Have you had that opportunity and have your attorneys so informed you?
A: Yes.

Q: Are you satisfied with the representation of your attorneys?
A: Yes.

Q: Do you think they have acted in your best interest?
A: Yes.

Q: Are you a citizen of the United States, Mr. Restucci?
A: Yes.

Q: You understand that if you are not citizens you subject yourself to deportation and being prevented from ever entering this country again by virtue of this plea of guilty.
    Do you have any questions that you wish to ask me regarding this plea?
A: No.

Q: Do you wish me to accept your plea, Mr. Restucci?
A: Yes.

Id., Ex. 2 at 15-17. The trial judge then accepted the plea and found that it was offered voluntarily, knowingly, and intelligently. Id., Ex. 2 at 17. Restucci later signed a waiver of his rights. Id., Ex. 2 at 23.

Restucci's counsel, Oliver Mitchell ("Mitchell"), then spoke on Restucci's behalf and pointed out unfortunate circumstances in his life, including abandonment by his mother at a young age. Id., Ex. 2 at 18-19. Mitchell asked the court for leniency. Id.

7

Restucci did not speak on his own behalf. After reviewing
Restucci's probation record and acknowledging that Restucci had
never materially run afoul of the law, Judge Banks sentenced the
petitioner to not less than fifteen years, nor more than twenty
years in prison, as defense counsel and the government had
agreed. Id., Ex. 2 at 23.

### C.    Restucci's Claims

Restucci claims that he was coerced into pleading guilty by
Mitchell, by Nason's counsel, Tom Horgan ("Horgan"), and by
members of Restucci's own family, making his plea involuntary.
As support for these claims, Restucci has submitted memoranda
from Mitchell's office, in which a paralegal summarizes meetings
between Restucci, his counsel, and Nason's lawyer, which appear
to bolster his claim that he was insisting on going to trial.
See Id., Ex. 11, Application for Further Appellate Review
("ALOFAR"), Catherine Dumais Mem. (November 16, 1995) and
Patricia Vickers Mem. (November 8, 1995). Restucci has also
included affidavits from his father, his ex-wife, and his former
mother-in-law, in which they all admit imploring him to plead
guilty, because Mitchell had convinced them Restucci would lose
at trial. Id., Ex. 8, Ex. B, Aff. of William Restucci (August
23, 1999); Ex. D, Aff. of Annette Galeno (June 29, 1999); Ex. E,
Aff. of Lucille Galeno (June 29, 1999); Ex. F, Aff. of Anthony
Restucci (June 5, 1999).

8

Restucci and Mitchell met before trial and Mitchell told him that he should plead guilty because he faced certain life imprisonment if found guilty of first degree murder, but that he would likely spend only 12 years in jail if he pled guilty to manslaughter. See Id., Ex. 11, Catherine Dumais Mem. Restucci also alleges an incident in which Mitchell and Horgan strongly admonished him to take the manslaughter plea. Id., Ex. 8, Restucci Aff. ¶ 11. Nason also asked him to do the same. Id., Ex. 11, Catherine Dumais Mem. Restucci's ex-wife, Annette Galeno, claims that Mitchell advised her to meet with Restucci in jail to convince him to plead guilty, which she did. Id., Ex. 8, Ex. D, Annette Galeno Aff. at ¶ 3. Restucci states that the actions of Mitchell and his family created a great deal of emotional stress for him and greatly affected his decision to plead guilty. Id., Ex. B, Restucci Aff. at ¶ 9, 16. Restucci also avers that Nason's family, believing that if Restucci did not plead guilty things would go worse for Nason and that his plea would not be accepted, forcefully urged Restucci to take the plea just before he stood in front of Judge Banks on November 14, 1995. Id. at ¶ 12. All of these factors, Restucci submits, indicate that his plea was involuntary.

Restucci also claims that Mitchell's advising him to plead guilty to manslaughter constituted ineffective assistance of counsel. Restucci submits that the affidavits from himself, his

father, his ex-wife and his former mother-in-law show that
Mitchell was indifferent to Restucci and his case.[1]  Throughout
the affidavits, Restucci and his family members state that
Mitchell repeatedly told them the case was hopeless, that witness
inconsistencies and other possible exculpatory evidence were
irrelevant, and that Restucci had to plead guilty.

Restucci steadfastly maintains in all of his post-plea
submissions that he was not involved in the attack on Singleton
and that he was attempting to break up the fight.  In page after
page, Restucci points out "facts" in the record that he believes
help prove his innocence.

Restucci argues that he had a good case for trial because
the three eyewitnesses -- Pettengill, Riley, and McKenzie -- were
mistaken in identifying him as one of the men kicking the victim.
He also contends that Nason stated that Restucci was not involved
in the beating when they were arrested, which is reflected in a
police report.  See Id., Ex. 8, Ex. C at ¶ 6 ("Nason stated that
his friend (Restucci) had nothing to do with the incident" and
"that they were only protecting themselves").  Furthermore,
Restucci argues that had he gone to trial, Nason would have
testified that Restucci was not involved in the beating and was
trying to break up the altercation.

---

[1] For example, Restucci alleges that Mitchell made remarks
to the effect that he was only being paid $50 an hour when he
usually made $250 an hour.  Id., Ex. 8, Restucci Aff. ¶ 15.

D.    **Subsequent Procedural History**

Restucci appealed his sentence on November 25, 1995 and his conviction was affirmed on July 28, 1997.  Id., Ex. 1 at 6.  On December 22, 1995, Restucci filed a motion to revise or revoke his sentence, and the motion was denied without a hearing.  Id. at 5.  After filing a *pro se* motion to withdraw his guilty plea and appealing the denial of this motion, Restucci filed a *pro se* motion for release from unlawful restraint on March 3, 1997, which was denied by Judge Volterra without a hearing on July 22, 1997.  Id., Ex. 1 at 6.  Restucci filed an amended motion for release from unlawful restraint and a petition for a writ of habeas corpus *ad subjiciendum* on May 21, 1997, both of which were denied without a hearing.  Id.  In his motion and amended motion for release from unlawful restraint, Restucci argued: 1) that his guilty plea was not knowing, intelligent, and voluntary because he was coerced into pleading guilty by his counsel, family and members of Nason's family; and 2) that Mitchell provided ineffective assistance of counsel.  Id., Ex. 3.

On August 20, 1997, the petitioner filed a *pro se* notice of appeal from the denial of the amended motion for release from unlawful restraint and a *pro se* notice of appeal from the denial of his motion for release from unlawful restraint.  Id., Ex. 1 at 6.  The Massachusetts Appeals Court affirmed the lower court's decisions denying Restucci's various motions, stating:

11

state remedies.  On October 2, 2000, Restucci moved to stay the
proceedings or decide the case on the merits.  On October 5,
2000, this Court administratively closed the case, stating that
the case could be reopened at the request of either party upon a
showing that the Courts of the Commonwealth had exhausted review
of the petitioner's claims.  Restucci filed additional motions
and appealed to the First Circuit, but the motions and appeal
were denied.  On September 28, 2001, Restucci filed his fourth
*pro se* petition for writ of habeas corpus,[2] which is presently
before the Court.

After Restucci amended his claim to conform with procedural
rules, the Respondent asked the Court to order Restucci to file a
More Definite Statement of the grounds on which his habeas claim
was based, because his *pro se* submissions were unclear.  The
Court so ordered on June 11, 2002 [Docket No. 26] and Restucci
complied.  Pet'r More Definite Statement [Docket No. 29].  In his
More Definite Statement, Restucci reiterated his claims of an
involuntary guilty plea and ineffective assistance of counsel.
Additionally, however, Restucci claimed that Judge Banks had
abused his discretion at trial in denying Restucci's motion to
sever his trial from Nason's.  Restucci had not previously raised
the issue in the state courts.

---

[2] Restucci initially framed his petition as a civil rights
claim.

13

## II.  DISCUSSION

### A.    Exhaustion

Restucci's habeas petition may present a mixed petition of exhausted and unexhausted claims.  As noted above, Restucci's claims are (1) that his guilty plea was involuntary; (2) that his trial counsel provided ineffective assistance; and (3) that the state court erred in denying his motion to sever his trial from Nason's trial.  Restucci, however, has arguably not exhausted this third claim in the state courts.  The parties apparently agree that the issue respecting the denial of the motion to sever was not explicitly presented to the Appeals Court and the Supreme Judicial Court.  Resp't Mem. Supp. Mot. to Dismiss [Docket No. 31] at 12-13; Pet'r Opp. to Mot. to Dismiss [Docket No. 33] at 2-3.  Restucci argues, however, that his appellate brief and ALOFAR can be construed as raising this issue.  Pet'r Opp. to Mot. to Dismiss at 2.  He points to passages in his appellate brief and ALOFAR wherein, within the context of analyzing the voluntariness of his plea and the ineffective assistance of counsel, he made references -- somewhat obliquely -- to the fact that his trial was not severed from Nason's.  See, e.g., Resp't List of Exhibits, Ex. 3 at 2, 5 (noting that the trial judge did not inquire properly into whether "the plea agreement was a voluntary act on the defendants part *free from coercive influence resulting from multiple representation or the proposed bargin* [sic] *itself*

14

. . .", that "[t]he counsels also never informed the defendant of the risk and dangers of joint representation . . .", and that the "joint defense can not [sic] be viewed as harmless . . ."); Id., Ex. 6 at 3 (noting in the context of the alleged involuntary plea that the record reflected a "denial of motion to sever").

The First Circuit has held that "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the exhaustion trick." Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988). The question here is close, especially given Restucci's *pro se* status.[3]

Whether the claim is exhausted is irrelevant, however, because the Court may reach the merits of an unexhausted claim to deny the petition. Even assuming that Restucci did fail to exhaust his claims, section 2254 and the Antiterrorism and Effective Death Penalty Act ("AEDPA") authorize this Court to deny the claims on the merits. A petition "may be denied on the

---

[3] As a *pro se* petitioner, Restucci is entitled to some latitude in the interpretation of his claims. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam) (noting that courts should read *pro se* pleadings less strictly than pleadings drafted by lawyers); Prou v. United States, 199 F.3d 37, 42 (1st Cir. 1999) (applying a more tolerant standard of particularity to a *pro se* motion for 28 U.S.C. § 2255 habeas relief).

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (2000). Accordingly, this Court addresses the merits of this claim infra pp. 28-30.

### B.    Restucci's Substantive Claims

#### 1.    Involuntariness of the Guilty Plea

Because the Appeals Court adjudicated Restucci's claims on the merits, this Court must review its determination using the deferential standard outlined by the habeas statute, as amended by AEDPA. Under this provision, this Court cannot grant habeas relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2000).

As a preliminary matter, this Court's duties under AEDPA are somewhat hindered by the Appeals Court's decision because the Appeals Court incorporated arguments from the Commonwealth's brief, en masse, as the basis of the decision, without articulating the precise reasons for its holding. The court stated that:

> [T]here was no abuse of discretion or other error in the
> Superior Court's denial of the defendant's various motions
> for the reasons set out in the Commonwealth's brief. The
> orders denying the defendant's motion for release for
> unlawful restraint, his amended motion for release from

16

unlawful restraint, and his petition for writ of habeas corpus are affirmed.

Resp't List of Exhibits, Ex. 5 (<u>Commonwealth</u> v. <u>Restucci</u>, No. 97-P-1840, Mem. and Order Pursuant to Rule 1:28).

Generally, courts should avoid incorporating counsel's arguments by reference in their opinions, but doing so may be unavoidable -- from time to time -- given the tremendous stresses state court systems endure amid a deluge of cases. <u>See, e.g.</u>, <u>In re Las Colinas, Inc.</u>, 426 F.2d 1005, 1008 (1st Cir. 1970) (noting that there is a "clash of interests" between "efficient administration" and the "undeniable right of losing counsel to be assured that his position has been thoroughly considered").[4]

Although the practice of adopting, by reference, the arguments from prevailing counsel's memorandum of law may make a

---

[4] The Supreme Judicial Court of Massachusetts, however, has not looked with favor upon the practice of trial judges' adoption of verbatim findings or conclusions by prevailing counsel. <u>See, e.g.</u>, <u>Commonwealth</u> v. <u>Harmon</u>, 410 Mass. 425, 430 (1991) (noting that the Supreme Judicial Court does "not recommend th[e] practice" of a judge's adoption of findings of fact from the Commonwealth's memorandum of law); <u>Commonwealth</u> v. <u>DeMinico</u>, 408 Mass. 230, 238 (1990) (stating that the Supreme Judicial Court has "criticized this practice"); <u>Lewis</u> v. <u>Emerson</u>, 391 Mass. 517, 524 (1984) (noting that the Supreme Judicial Court has "previously cautioned against a trial judge's verbatim adoption of a litigant's proposed findings and conclusions"). Although here the Massachusetts Appeals Court adopted the *arguments* of the Commonwealth's counsel (and not necessarily the findings of fact or conclusions of law), the same concerns are present. Specifically, "[t]he independence of the court's thought process may be cast in doubt" when the arguments or "findings proposed by one of the parties winds up as the court's opinion." <u>In re Las Colinas, Inc.</u>, 426 F.2d at 1009 (1970).

habeas court's task of applying the deferential standards set out in section 2254 more difficult, it does not preclude proper habeas review and this Court will rule on Restucci's ineffective assistance claims based upon the record before it. See, e.g., Harmon, 410 Mass. at 430 (noting that the standard of appellate review does not change even though the judge adopted findings of fact from the Commonwealth's memorandum of law); DeMinico, 408 Mass. at 238 (1990) (stating that the findings of fact that the trial judge adopted verbatim from the Commonwealth's memorandum are still "formally" the judge's and "will stand if supported by evidence"), quoting United States v. El Paso Natural Gas Co., 376 U.S. 651, 656 (1964); see also Neverson v. Bissonette, --- F. Supp. 2d ---, No. CIV.A.98-11719-WGY, 2003 WL 245508, at *9 (D. Mass. Feb. 4, 2003). The Court thus now turns to the arguments adopted by the Appeals Court, as they appeared in the Commonwealth's brief, to determine whether the Appeals Court used a standard contrary to clearly established federal law or was objectively unreasonable in applying the law to the facts of this case.

A state court decision is contrary to clearly established federal law only if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable

18

facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  In
reviewing Restucci's claim respecting the involuntariness of his
guilty plea, the Appeals Court -- by adoption -- cited Boykin v.
Alabama, which held that "[a]dmissibility of a confession must be
based on a reliable determination on the voluntariness issue
which satisfies the constitutional rights of the defendant." 395
U.S. 238, 242 (1969) (internal citations omitted).  The Appeals
Court, therefore, applied a standard that was consonant with, not
contrary to, established federal law.

Because the Appeals Court used a standard that was not
contrary to established federal law, Restucci's claim may succeed
only if the Appeals Court's opinion comprised an unreasonable
application of federal law respecting the voluntariness of guilty
pleas.  A state court decision is deemed unreasonable when it
"identifies the correct governing legal principle from [the
Supreme] Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case."  Williams, 529
U.S. at 413.  The First Circuit has explained that the
appropriate inquiry is whether the state court's application of
law was objectively unreasonable, that is, whether it had "'some
increment of incorrectness beyond error' . . . great enough to
make the decision unreasonable in the independent and objective
judgment of the federal court."  McCambridge v. Hall, 303 F.3d
24, 36-37 (1st Cir. 2002) (citations omitted).  In assessing the

reasonableness of the Appeals Court's analysis, this Court must look to the underlying constitutional standard for claims of an involuntary guilty plea.  See, e.g., Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).

The Appeals Court's determination with respect to the voluntariness of Restucci's plea was objectively reasonable.  A defendant's guilty plea must be made knowingly, intelligently, and voluntarily, with an understanding of the direct consequences of the plea and the various rights being surrendered.  Boykin, 395 U.S. at 242-43.[5]  A guilty plea must be knowing and voluntary because it requires the waiver of three fundamental constitutional rights: the right to a jury trial; the right to confront one's accusers; and the privilege against self-incrimination.  Id. at 243.  The question is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31 (1970).

In this case, the Appeals Court adopted the objectively reasonable analysis set forth by the Commonwealth's arguments as the basis for its opinion.  Specifically, the court noted (by adoption) that the trial judge had executed a model plea colloquy with Restucci, which presented no patent or latent ambiguities.

---

[5] A guilty plea may be collaterally attacked only as to the issue of whether the plea was voluntary and intelligent.  United States v. Broce, 488 U.S. 563, 569 (1989).

Resp't List of Exhibits, Ex. 4 at 24-29.  In adopting the
Commonwealth's brief, the court also dismissed the import of the
various affidavits, submitted by Restucci, that "conclusorily
stated" that Restucci was "threatened" and was in a "duressed
state."  Id. at 29-31.  The court refused to credit the "self-
serving" affidavits, ruling that the various "pressures" facing
Restucci did not constitute coercion[6] and that the plea was
entirely voluntary.  Id.

The record and federal law support the Appeals Court's
rulings.  First, the record reflects a plea colloquy between
Judge Banks and Restucci that was more than sufficient.  Restucci
was told what rights he was surrendering and was asked his reason
for pleading guilty.  He answered affirmatively to questions of
his own guilt and indicated that he had not been coerced and was
pleading guilty of his own free will.  Restucci was asked if he
suffered from any mental defect or was under the influence of
alcohol or drugs at the time he pled, and Restucci answered he
was not.  The trial court inquired into Restucci's education and
background to evaluate his ability to understand what was taking
place.  Judge Banks clearly made a careful inquiry into the
intelligence and voluntariness of Restucci's plea.

---

[6] In support, the Commonwealth -- and the Massachusetts
Appeals Court by adoption -- cited Commonwealth v. Bolduc, 375
Mass. 530, 536 (stating that "any defendant who pleads guilty
does so under the weight of an assortment of pressures that are
intrinsic to such a situation").

Furthermore, the record neither reflects impermissible coercion nor otherwise suggests the plea was involuntary.  A plea is involuntary if "the accused does not understand the nature of the constitutional protections he is waiving" or "because he has such an incomplete understanding of the charge [against him] that his plea cannot stand as an intelligent admission of guilt."  Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976).  In this case, however, there is no suggestion that Restucci misunderstood the constitutional protections he was waiving or the nature of the charge against him.  Rather, Restucci's entire argument rests on the so-called "coercion" of his counsel, Nason's counsel, his family, and his friends.  Obviously, state agents are not permitted to produce a plea through "mental coercion overbearing the will of the defendant."  Brady v. United States, 397 U.S. 742, 750 (1970).  Restucci, however, does not suggest any improprieties by state actors.  Rather, he argues that an assortment of private actors -- his counsel, his co-defendant's counsel, and his family -- "coerced" him.

Restucci simply misunderstands the notion of coercion.  There are no threats of physical harm in the record and any suggestion that Restucci's will was overborne is overblown.  A plea is not involuntary when simply motivated by the desire to "accept the certainty or probability of a lesser penalty rather than face a wider range of [sentencing] possibilities."  Id. at

750-51.  In other words, Restucci's protestations of actual
innocence -- while potentially lamentable -- are extraneous to
the analysis here.  There is nothing in the record to suggest,
however, that counsel, friends, or family wanted anything but a
more lenient penalty for Restucci.  Of course, this Court is
sensitive to the fact that every individual facing criminal
charges endures undeniable and substantial pressures because of
the obvious and severe consequences that may flow from
conviction.  If the pressures confronting Restucci were
sufficient to render his plea "involuntary," however, this Court
doubts that _any_ guilty plea could survive collateral attack.  For
these reasons, Restucci's claim must fail.

### 2.   Ineffective Assistance of Counsel

The Appeals Court's decision with respect to the ineffective
assistance of counsel claim is due no deference in this case.
Generally, a habeas court cannot grant habeas relief unless the
state court's adjudication "resulted in a decision that was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States."  28 U.S.C. § 2254(d)(1) (2000).  If, however,
a petitioner fairly presents and properly exhausts a claim before
the state courts, but the state courts do not address or evaluate
the claim, the deferential standard articulated in AEDPA does not
apply.  Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001)

23

in support of his ineffective assistance claim.  At the plea hearing, Restucci stated that he was pleading guilty freely, willingly, and voluntarily; that no one forced him to plead guilty; that no threats had been made; that he had not been coerced in any way into pleading guilty; and that no promises had been made which induced him to plead guilty.  Resp't List of Exhibits, Ex. 2, at 15-17.  Restucci has produced no evidence beyond his self-serving affidavit and the affidavits of members of his family to corroborate his claim of coercion.  The state court's plea colloquy, by contrast, was careful, candid, and complete, and Restucci's answers were clear and unequivocal.  The Court recognizes that Restucci likely suffered great anxiety while he contemplated his decision to plead guilty, but such emotional pressures are simply unfortunate appendages of the criminal justice system.  Anxiety coupled with candid and blunt advice does not rise to the level of coercion.  This Court honors the Supreme Court's proclamation in Blackledge and rules that Restucci's affidavits are insufficient as a matter of law to overcome the presumption of verity ascribed to his statements in open court.  To hold otherwise is to eviscerate the import of the plea hearing.

Moreover, a reasonably competent criminal defense attorney likely *should* have urged Restucci to plead guilty.  Restucci would have received life in prison had he been convicted of first

degree murder at trial.  Mass. Gen. Laws ch. 265, § 2 (2000).

Moreover, three eyewitnesses identified Restucci as an assailant

in the murder.  Accordingly, Restucci's trial counsel advised his

client -- and correctly so -- that pleading guilty to

manslaughter would result in a much more moderate sentence.

Counsel's advice was patently reasonable.  Because Restucci's

claim fails <u>Strickland</u>'s performance prong, the Court need not

decide the issue of prejudice.  Therefore, the Court rejects

Restucci's claim of ineffective assistance of counsel.

### 3.    Denial of the Motion to Sever

Although Restucci's claim respecting the denial of his

motion to sever may not be exhausted, the Court denies the claim

on the merits.[9]  The criminal justice system prefers joint trials

of criminal defendants indicted together to promote efficiency

and to avoid the impropriety and inefficiency of inconsistent

verdicts.  <u>See</u> <u>Zafiro</u> v. <u>United States</u>, 506 U.S. 534, 537 (1993).

Moreover, the decision whether to sever is "largely left to the

sound discretion of the trial court."  <u>United States</u> v. <u>Magana</u>,

127 F.3d 1, 7 (1st Cir. 1997); <u>see also</u> <u>Commonwealth</u> v. <u>Moran</u>,

387 Mass. 644, 658 (1982) (whether to allow severance is "usually

a matter within the sound discretion of the trial judge").

---

[9] As discussed above, a petition "may be denied on the
merits, notwithstanding the failure of the applicant to exhaust
the remedies available in the courts of the State."  28 U.S.C. §
2254(b)(2) (2000).

28

Generally, a denial of a motion to sever is only improper where it "deprives a defendant of a fair trial, resulting in a miscarriage of justice." Magana, 127 F.3d at 7; see also United States v. Houle, 237 F.3d 71, 74 (1st Cir. 2001) (holding that misjoinder is only reversed where it had "substantial and injurious effect or influence in determining the jury's verdict") (internal citations omitted). Furthermore, courts review denial of a motion to sever for "manifest abuse of discretion." United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999); accord Houle, 237 F.3d at 74-75.

Notwithstanding Restucci's protestations of innocence, there is nothing in the record to suggest that the trial judge abused his discretion in refusing to sever Restucci's and Nason's trial. Indeed, there is nothing in the record that demonstrates any prejudice. Restucci makes no claims of mutually antagonistic defenses or a significant disparity in the evidence, which might constitute grounds for severance. Obviously, because there was no trial, the denial of severance did not affect the jury's verdict. The Court rules that the trial court did not abuse its discretion in refusing to sever Restucci's trial and, therefore, his claim fails.

## III. CONCLUSION

Accordingly, for the reasons set forth above, petitioner William Restucci's petition for a writ of Habeas Corpus [Docket No. 4] is DENIED.  Furthermore, because the petition is denied on the merits, Respondent's Motion to Dismiss the Petition [Docket No. 30] is DENIED as moot.

SO ORDERED.

_William G. Young_
WILLIAM G. YOUNG
CHIEF JUDGE



**Not for publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

———————————

No. 03-1392

WILLIAM RESTUCCI,

Petitioner, Appellant,

v.

LUIS SPENCER,

Respondent, Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

———————————

Before

Lynch, Lipez and Howard,
Circuit Judges.

———————————

William Restucci on brief pro se.
Thomas F. Reilly, Attorney General, and Annette C. Benedetto,
Assistant Attorney General, on brief for appellee.

———————————

December 22, 2003

———————————

**Per Curiam**.   Pro se petitioner William Restucci ("Restucci") appeals from the denial of his habeas petition filed under 28 U.S.C. § 2254.  Having thoroughly reviewed the record and the parties' briefs on appeal, we agree that Restucci is not entitled to habeas relief, substantially for the reasons stated by the district court in its memorandum and order of March 6, 2003.  We add only the following comments.

With respect to Restucci's claim that his guilty plea was involuntary because he was coerced into pleading guilty by his counsel and others, we agree with the district court that, reviewed deferentially, see 28 U.S.C. § 2254(d)(1), the Massachusetts Appeals Court's decision rejecting this claim was not "contrary to" or an "unreasonable application of" Boykin v. Alabama, 395 U.S. 238 (1969), and its progeny.

With respect to Restucci's claim that his trial counsel rendered ineffective assistance by coercing him to plead guilty, we agree with the district court that, reviewed de novo, see Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (applying de novo review where state court fails to address properly presented issue), this claim lacks merit.

Restucci also argues that the state trial court erred in failing to sever his case from his co-defendant's case. Although this claim may not have been exhausted in the state courts, we agree with the district court that it fails in any

-2-

event.  See 28 U.S.C. § 2254(b)(2) (providing that a petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").  We add that, to the extent Restucci is arguing that the state court should have conducted separate change-of-plea hearings, that claim also fails.  It does not appear that Restucci requested a separate plea hearing, only that he sought a separate trial.  Moreover, Restucci has no constitutional right to a separate plea hearing.  Finally, Restucci has not shown how he was prejudiced by the joint hearing.  Although he alleges that he felt pressure to plead guilty from his co-defendant and his co-defendant's counsel, their guilty pleas were not part of a package deal, nor were the defendants represented by the same counsel.  Further, although Restucci alleges that the plea judge failed to "probe the mind of Restucci" because of the "simultaneous pleas," the record reveals that the judge conducted a full and fair colloquy.

Finally, we disagree with Restucci's contention that the district court should have held an evidentiary hearing before denying his claims.  While genuine issues of material fact may not be resolved without an evidentiary hearing, a hearing is not required where a habeas petition is inadequate on its face.  Carey v. United States, 50 F.3d 1097, 1098 (1st Cir. 1995).  Because Restucci did not present any credible

-3-

basis for disbelieving his sworn statements at the plea hearing, or provide any concrete evidence in support of his claims, no hearing was required. See, e.g., Porcaro v. United States, 832 F.2d 208, 212 (1st Cir. 1987) (holding that no evidentiary hearing was required where habeas petitioner lacked sufficient evidence to establish his claims).

The judgment of the district court is affirmed. See 1st Cir. Loc. R. 27(c).



# COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT
CLERK'S OFFICE
1500 NEW COURT HOUSE
BOSTON, MASSACHUSETTS 02108
(617) 725-8106

June 29, 2000

William Restucci
MCI - Norfolk
P.O. Box 43
Norfolk, MA 02056

RE:    No. 2000-P-0604

**COMMONWEALTH**
**vs.**
**WILLIAM RESTUCCI**

NOTICE OF DOCKET ENTRY

Please take note that, with respect to the MOTION for appointment of counsel, filed by William Restucci. (Paper #14),

on June 29, 2000, the following order was entered on the docket of the above-referenced case:

RE#14 Denied. (Perretta, J.) *Notice..

Very truly yours,

The Clerk's Office

Dated: June 29, 2000

To:  Jane A. Sullivan, Esquire
     William Restucci

approximately 1:00 a.m., Mr. Singleton and Mr. Pettengill were approached by three men—Defendant William Restucci (Restucci), Julio Nason, and Eitan Grinspon.

One of the men poured a glass of beer out of Mr. Singleton's pitcher and drank the glass of beer. Mr. Singleton took exception to that action but did not get up. At that point, Restucci and his friends left La Bella's Bar. Mr. Pettengill spoke to Mr. Singleton and then Mr. Pettengill got up and went into the bathroom. Sometime while Mr. Pettengill was in the bathroom, Mr. Singleton exited La Bella's Cafe and approached Restucci and his friends and made a comment about disrespecting his friend. The substance was that one of the men had taken some of their beer.

At that point, Mr. Michael Riley, a witness, allegedly saw Restucci and his friends turn on Mr. Singleton and begin to strike him with their fists. At that point, Mr. Pettengill exited La Bella's Cafe to try and assist his friend. He saw Restucci and the other men punching Mr. Singleton. Mr. Riley continued to watch this, and allegedly saw Mr. Singleton being kicked repeatedly by Restucci and his friends. As Mr. Pettengill approached the group of three, Mr. Grinspon broke away from the group and approached him with a knife. Mr. Pettengill continued to watch as Restucci and Mr. Nason kicked Mr. Singleton. As Mr. Singleton went down on the ground, Mr. Grinspon backed Mr. Pettengill into the bar.

As Mr. Riley continued to watch this beating, he was allegedly joined by another witness, Art McKenzie, also a security guard. Mr. McKenzie, allegedly witnessed Restucci and Mr. Nason striking Mr. Singleton. After Mr. Pettengill was ordered off and back in the bar, Mr. Riley and Mr. McKenzie crossed the street to intercede. As they did,

(1993); *Commonwealth v. Duest*, 30 Mass. App. Ct. 623, 625 (1991). The judge may decide the motion solely on affidavits. *Commonwealth v. Stewart*, 383 Mass. 253, 259-260, 418 N.E.2d 1219 (1981). The credibility, weight, and impact of the affidavits in support of the motion are entirely within the judge's discretion. He is not required to believe them even if they are undisputed. See *Commonwealth v. Grace*, 370 Mass. 746, 752 (1976); *Commonwealth v. Gould*, 413 Mass. 707, 716 n. 9 (1992).

The judge must determine, by means of an adequate colloquy, that the plea tendered is both intelligently and voluntarily made. *Commonwealth v. Duest*, 30 Mass. App. Ct. at 631. A plea is intelligently made when the defendant has knowledge of the elements of the charges against him. *Commonwealth v. Fernandes*, 390 Mass. 714, 719 (1984). The defendant must receive real notice of the true nature of the charge to which he pleads guilty. *Commonwealth v. Sullivan*, 385 Mass. 497, 509 (1982). There must be an explanation by the judge or defense counsel of the elements of the crimes charged or an admission by the defendant to the facts constituting those crimes. *Henderson v. Morgan*, 426 U.S. 637 (1976); *Commonwealth v. Huot*, 380 Mass. at 406-410. This requirement can be satisfied in one of several ways: (1) by the judge explaining to the defendant the elements of the crime; (2) by counsel's representation that he has explained to the defendant the elements he admits by his plea; or, (3) by the defendant's stated admission to facts recited during the colloquy which constitute the unexplained elements. *Commonwealth v. Colantoni*, 396 Mass. 672, 678-679 (1986). Furthermore, an intelligent plea requires that the defendant have knowledge of the procedural protections that he would forego by pleading guilty. See *Commonwealth v. Duquette*, 386 Mass. 834,

841 (1982). The judge must ensure that the defendant is informed, on the record and in open court, of the three constitutional rights which are waived by a plea of guilty: "the right to trial, the right to confront one's accusers, and the privilege against self-incrimination." *Ibid.*

The concept of voluntariness, in turn, requires that the defendant tender the plea free "from coercion, duress, or improper inducements." *Commonwealth v. Duest*, 30 Mass. App. Ct. at 631. To determine the voluntariness of the defendant's plea, the judge should conduct a real probe of the defendant's mind. *Commonwealth v. Fernandes*, 390 Mass. at 719. The judge should determine whether the plea was "being extracted from the defendant under undue pressure," *ibid*, quoting *Commonwealth v. Foster*, 368 Mass. 100, 107 (1975). Representation and consultation with counsel are significant factors in determining whether a guilty plea and, therefore, an admission to sufficient facts, was knowingly and voluntarily made. *Commonwealth v. Grant*, 426 Mass. 667, 671 (1998) quoting *Commonwealth v. Russell*, 37 Mass. App. Ct. 152, 157 (1994), *cert. denied*, 513 U.S. 1094, 115 S. Ct. 759, 130 L.Ed.2d 657 (1995). The question whether a defendant was subject to undue pressure to plead guilty must be considered in some manner on the record. *Commonwealth v. Foster*, supra, 368 Mass. at 107. "No particular form of words need be used in the required inquiry of a defendant." *Commonwealth v. Lewis*, 399 Mass. 761, 764, 506 N.E.2d 891 (1987). But a brief colloquy that does not probe the defendant's mind will not do. See *Commonwealth v. Fernandes*, 390 Mass. 714, 717-719 (1984).

I.    **DEFENDANT'S PLEA OF GUILTY WAS NOT VOLUNTARY DUE TO THE COERCION, DURESS, AND UNDUE INFLUENCE OF COUNSEL.**

In the instant case, Defendant argues that he was coerced into pleading guilty by his trial counsel, Oliver Mitchell, and the trial judge failed to probe the mind of the Defendant.   Defendant argues that the colloquy conducted in this matter is analogous to *Commonwealth v. Fernandez*, 390 Mass. 714 (1984).   The error at this colloquy is doubly compounded by the fact that the judge was conducting simultaneous pleas. *Id*. The judge in this case failed to probe the mind of Restucci, or the mind of Julio Nason, and really inquire in depth if his plea was truly voluntary.   The judge in this matter did exactly what the *Fernandez* court  cautioned the colloquy should not become, i.e. a "litany."   The colloquy is an attempt to make "a live evaluation of whether the plea has been sufficiently meditated by the defendant with guidance of counsel, and whether it is not being extracted from the defendant under undue pressure" *Id*. at 716 (emphasis added).   It cannot be said that the judge conducted a real inquiry of the Defendant's motives for pleading guilty, when he was conducting simultaneous pleas.

The record in this matter will support a finding that the judge in the *Fernandez* case asked more probing questions as to the motives for pleading guilty than did the judge in the instant matter.   The judge in the *Fernandez* case conducted the following colloquy with the defendant after the prosecutor completed his statement of facts:

The judge: "What do you say about this, Mr. Fernandes?   Did you hear that?"

The defendant: "Yes, I did, your Honor."

The judge: "What do you say about it?   Is that how it happened?"

The defendant: "Yes."

The judge: "Anything you want to add to it?"

The defendant: "No."

The judge: "Anything that was said that isn't true?"

The defendant: "No."

The judge: "Anything further that you want to tell me about?"

The defendant: "No."

The judge: "Who is your lawyer?"

The defendant: "Mr. McMahon."

The judge: "How long has he represented you?"

The defendant: "I called him, his office, the night I was arrested."

The judge: "You understand you have a right to a jury trial?"

The defendant: "Yes."

The judge: "You can waive a jury and try it to a judge alone?"

The defendant: "Yes."

The judge: "You understand you have a right to have your lawyer cross-examine anybody who testifies against you?"

The defendant: "I do."

The judge: "You don't have to tell me anything. You have no reason to incriminate yourself, except for this plea of guilty. Do you understand that?"

The defendant: "I do."

The judge: "Why are you doing this?   Is this the way it happened?"

The defendant: "Yes."

The judge: "How far did you go in school?"

The defendant: "I finished high school."

The judge: "Any trouble understanding me?"

The defendant: "I understand you all."

The judge: "Do you know what the penalty is for kidnapping?"

The defendant: "I guess life."

The judge: "Up to twenty years. Assault and battery with a dangerous weapon is ten, and assault and battery is two and a half. Knowing all that, you still want me to take your plea?"

The defendant: "I do."

As noted above, the judge in *Fernandez* at the minimum, asked the defendant why he was pleading guilty. A look at the plea transcript clearly indicates that the judge in this matter went through the colloquy in an assembly line fashion. A good illustration can be found in the plea transcript at pages 2-15 through 2-17 in where the following exchange takes place:

> THE COURT: Now, I want each of you to respond. Are you pleading guilty freely, willing and voluntarily?
>
> (by William Restucci) Yes.
> (by Julio Nason) Yes.
>
> THE COURT: Has anyone forced you to plead guilty?
>
> (by William Restucci) No.
> (by Julio Nason) No.
>
> THE COURT: Have any threats been made which required you to plead guilty?
>
> (by William Restucci) No.
> (by Julio Nason) No.
>
> THE COURT: Have you been coerced in any way into pleading guilty?
>
> (by William Restucci) No.
> (by Julio Nason) No.
>
> THE COURT: Any promises been made *which* induced you to plead guilty?
>
> (by William Restucci) No.
> (by Julio Nason) No.
>
> THE COURT: Are you pleading guilty because you are guilty and for no other reason?
>
> (by William Restucci) Yes.
> (by Julio Nason) Yes.

THE COURT: Have you had sufficient time to fully and completely discuss this case with your attorney and have you had explained to you all of the elements of the offense that you're pleading guilty to and the requirement of the Commonwealth to prove its case beyond a reasonable doubt and all of the alternatives to pleading that are available? Have you had that opportunity and have your attorneys so informed you?

(by William Restucci) Yes.
(by Julio Nason) Yes.

THE COURT: Are you satisfied with the representation of your attorneys?

(by William Restucci) Yes.
(by Julio Nason) Yes.

THE COURT: Do you think they've acted in your best interest?

(by William Restucci) Yes.
(by Julio Nason) Yes.

THE COURT: Are you a citizen of the United States, Mr. Nason?

(by Julio Nason) Yes; I am.

THE COURT: And are you a citizen of the United States, Mr. Restucci?

(by William Restucci) Yes.

THE COURT: You understand that if you are not citizens you subject yourself to deportation and being prevented from ever entering this country again by virtue of this plea of guilty.

THE COURT: Do you have any questions that you wish to ask of me regarding this plea?

(by William Restucci) No.
(by Julio Nason) No.

THE COURT: Do you wish me to accept your plea, Mr. Restucci?

(by William Restucci) Yes.

THE COURT: Do you, Mr. Nason?

(by Julio Nason) Yes.

By no stretch of the imagination can it be argued that the judge was probing the minds of the defendants' as they plead guilty.   As noted in the attached affidavits, counsel was fully engaged in soliciting family members to pressure Restucci to plead guilty. Moreover, Restucci believed then, and does so today, that Mr. Nason's exonerating him of any participation in the beating would have aided Restucci in his defense.

It is clear from the statements attributed to Oliver Mitchell by the Defendant's family, that counsel did not want to take this matter to trial due to the investment of substantial time and the CPCS rate of pay.   In light of this, counsel failed to investigate the case with appropriate vigor.

Massachusetts opinions discussing the very issue before this Court are distinguishable from the case at bar. See *Commonwealth v. Pingan*, 44 Mass. App. Ct. 41 (1997); *Commonwealth v. Duest*, 30 Mass. App. Ct. 623 (1991); *Commonwealth v. Buldoc*, 375 Mass. 530 (1978); *Huot v. Commonwealth*, 363 Mass. 91 (1973).

In <u>Pingaro</u>, the Defendant filed a motion for a new trial and a request to withdraw his guilty plea. This request was subsequently denied by Donovan, J., and upheld by the Appeals Court. In the <u>Pingaro</u> case,  however, the defendant alleged that he had never received a plea colloquy and that there were no transcripts of the plea colloquy in existence, as he had filed his motion for a new trial 15 years after the plea. The Court held, "the mere unavailability of the transcripts, through no fault of the Commonwealth, but rather as the result of protracted delay in a defendant's attack on his guilty plea, does not, in and of itself, rebut the normal presumption of regularity accorded the earlier

proceedings; Nor does it raise the inference that a guilty pleading defendant was not advised of his constitutional rights."

In essence, the Appeals Court stated that <u>Pingaro</u> presented a naked claim that he did not receive a constitutionally adequate guilty plea colloquy and as a result, this case is distinguishable from <u>Commonwealth v. Fernandes</u>. Furthermore, the court found, "Utmost in depriving Pingaro's assertions of probative force, was his status as an <u>admitted multiple perjurer</u>, as well as, a convicted felon on other charges involving dishonesty and judicial proceedings." M.G.L. c. 233 s. 21.

In the matter of <u>Huot v. Commonwealth</u>, 292 N.E.2d 700 (1973), the defendant moved to withdraw his guilty plea. In this case, the single justice had concluded that there was "a very serious risk of a first degree conviction." The case at bar is thus clearly distinguishable since, in the instant case, the advice given to Mr. Restucci was <u>not</u> given in the backdrop of a very strong case against him. One of the co-defendants in the case at bar had informed the police that Mr. Restucci had nothing to do with the assault at all, and the trial had not commenced as it did in the matter of <u>Huot</u>. In <u>Huot</u>, it was only after Attorney Hutton stated that the case was going badly that Huot himself asked whether the plea to second degree murder might be accepted. In the matter of <u>Huot</u>, the defendant had heard the evidence against him and then responded to trial counsel's reasonable advice by deciding to plead guilty to a lesser included charge.

In the matter of <u>Commonwealth v. Bolduc</u>, 378 N.E.2d 661 (1978), the defendant alleged that trial counsel had informed him that since he was already serving a life sentence, he had nothing to lose by pleading guilty. The Defendant in Bolduc further

alleged coercion, by his trial counsel's statement that a guilty plea might increase the likelihood of favorable sentences for the codefendants. Also, in this case, no plea bargaining agreement was conditioned upon a guilty plea by the defendant between the prosecutor and defense counsel. In the case at bar, the District Attorney had informed trial counsel who subsequently informed the Defendant, that either all of them took the plea bargain, or a plea was not an option. Clearly, this distinguishes the case at bar from Bolduc.

In Commonwealth v. Duest, supra at 573, the Supreme Judicial Court focused upon the fact that the defendant waited 17 years to challenge his conviction in reference to his desire to withdraw his guilty plea. The court held that, "Certain aspects of the third affidavit would strain any judge's credulity - the time elapsed from the submission of the plea, the claim that defendant, 18 years old when he pleaded, could now recall questions that the judge did not ask, the materially different versions of the defendant's conversation with his attorney between the first and second affidavits (which had the attorney misdescribing the intent elements of both offenses), and the third affidavit ( which had the attorney using coercion to obtain the defendant's guilty plea) - but the judge did not directly reach the question of the defendant's credibility." supra at 575. "Instead he put his denial of the motion on the basis that the evidence offered in support of the motion was not, in fact, "newly discovered" in the sense that it was "unknown and unavailable at the time of the [first motion] despite the diligence of the moving party." supra at 575.

In Duest, the "defendant had attempted to undo two (2) Massachusetts convictions, by that time, almost 17 years old, and long since served." These convictions

were based on guilty pleas and the issue was whether or not the pleas were entered both understandingly and voluntarily was hampered by the loss or destruction of the stenographic notes that were made of the plea hearing.(No transcript had been prepared). Also raised by the defendant in Duest, was that he had not pleaded knowingly to either charge because his attorney had misexplained the elements.  This case is clearly distinguishable from the case at bar in multiple ways.  The Defendant in the case at bar, challenged his plea, pro se, at the earliest possible post-conviction stage, and has raised meritorious claims, supported by several witnesses.

Furthermore, in the initial motion for a new trial, Duest, raised the issue of conflict of interest due to the fact that the attorney simultaneously represented both the defendant and his cousin. This factor is also distinguishable from the Restucci matter.

## CONCLUSION

It is clear from the above, that the colloquy was flawed in an important respect. In light of the facts in this matter and *Commonwealth v. Fernandez*, 390 Mass. 714 (1984), the Defendant must be given a new trial.

Respectfully submitted,
William Restucci,
by his attorney

Greta A. Janusz, Esquire
179 William Street
New Bedford, MA 02740
(508) 993-6499
B.B.O. # 549860

DATED:

14

CERTIFICATE OF SERVICE,

I, Greta A. Janusz, attorney for the Defendant, William Restucci,

certify that on 9/1//99, I mailed copies of Defendant's Motion for a New Trial and

Memorandum of Law in Support to the District Attorney's Office, at 1 Bullfinch

Place, Boston, MA 02114.

Greta A. Janusz, Esquire
179 William Street
New Bedford, MA 02740
(508) 993-6499



COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

00-P-604

COMMONWEALTH

v̲s̲.

WILLIAM RESTUCCI.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

This is the defendant's appeal from the motion judge's refusal to act on his third motion[1] to withdraw his guilty plea based on his claim that he did not plead guilty intelligently, knowingly and voluntarily.  It is also his second appearance before the Appeals Court challenging his guilty plea on that same ground.

The defendant's first appeal to this court arose from the denial of (1) his motion for release from unlawful restraint; (2) an amended motion for release from unlawful restraint; and (3) a petition for writ of habeas corpus.  All three of his requests for relief were based on his continuing assertion that trial counsel coerced him into pleading guilty and that his plea was, therefore, involuntary.  We affirmed the denial of those earlier

------

[1] Previously, the defendant filed a motion to withdraw his guilty plea and a motion to reconsider the denial of his motion to withdraw the guilty plea.  The present motion is styled as a motion for a new trial.

The Following chemical reserched From the toxicoligy of George singleton

= Diazepam = tranquilizers, sedative, and also used as a skeletal muscle relaxant, to produce anesthesia, as an anticovulsant and in the management of alcohol withdrawal symptoms and delirum tremens.

= Glutethmide = sedative and hypnotic

= Alprazolam = tranquilizer, same as diazepam

= Amitriptyline = antidepressant

= Butalbital = An intermediate-acting barbituate

Carbamazepine = used in treatment of pain associated with trigeminal neuralgia and in epilepsy manifested by certian typs of sezures.

= Chlordiazepoxide = treatment of condition with anxiety, tension, and apprehension or prominent symtoms, in acute anxiety, and in chronic alcoholism or alcohol withdrawal.

= Chlorpheniramine = for antihistamine

= Chlorpromazine = used as antiemetic and tranquilizer

= Clonazepam = an anticonvulsant

= Cyclobenzaprine = muscle relaxant

= Demoxepam = minor tranquilizer

= Disopyramide = A cardiac depressant with anticholinergic properties

(1)

= Propranolo = A beta - adrenergic blocking agent output, reduces blood pressure and is effective in prophylaxis of Migrain

= Quinidine = it has cardiac depressant activity

= Salicylate = asprin

= secobarbital = short acting barbituate used as a hypnotic and sedative,

The ❡ uses of the drugs and what for was reserched by and from the 27th Edition Dorlands Illustrated Medical Dictionary

(3)



# Goldstein & Manello, P.C.

### Counsellors at Law

265 Franklin Street
Boston, Massachusetts 02110
Telephone  617 439-8900

Telecopier  617 439-8988
Telex 94 0476

February 16, 1995

Edward B. Sussman, M.D.
Hubbard Regional Hospital
340 Thompson Road
Webster, MA 01570

Re:  William Restucci

Dear Dr. Sussman:

    Oliver Mitchell has asked that I forward to you the enclosed Massachusetts General Hospital records of George Singleton relative to the above-referenced matter.

Sincerely,

Lori A. Joyce
Secretary to Oliver C. Mitchell

LAJ/hs
Enclosure
64468@c/sussman/hosp.rec





# HUBBARD REGIONAL HOSPITAL

340 Thompson Road
Webster, Mass. 01570

Telephone (508) 943-2600

February 14, 1995

Attorney Oliver C. Mitchell, Jr.
Goldstein & Manello
265 Franklin Street
Boston, MA 02110

Dear Attorney Mitchell:

Re:  Commonwealth William Restucci
     (My file #EBS95-27)

I received and reviewed the documents received by hand from
you on February 8, 1995 regarding the above case.

I would also like to review the following:  ambulance and
Massachusetts General Hospital medical record re:  George
Singleton; autopsy photogaphs, diagrams, pathologist's case
folder contents, neuropathology report and death certificate
re:  George Singleton; Serology (Crime Laboratory) Supplemental
reports re:  comparison studies Re:  George Singleton blood,
hair and clothing fiber and clothing of defendant William
Restucci and codefendant Julio Nason; crime laboratory notes
and diagrams; police reports (CC #41-336774), including witness
and defendants statements; postmortem toxicology report re:
George Singleton; and photographs of the defendant and
codefendant with and without clothing, taken by Boston Police
Department.

Please let me know the trial date, time and place as soon as
possible for my scheduling purposes.

You gave me a duplicate set of the July 28, 1994 Grand jury
transcript, which is returned to you (enclosed).

If I can be of service to you, your colleagues, or clients please
contact me at Hubbard Regional Hospital, 340 Thompson Road,
Webster, MA 01570, phone number (508)943-4588 or 139 Newton
Avenue, North Worcester, MA 01609, digital beeper number
(508)391-7400 (rings three times, insert number you wish called
press # sign).  My fax number is 508-949-1544.

Sincerely,

Edward B. Sussman, M.D.
Chief of Pathology
Forensic Pathologist

EBS/cag





**HUBBARD REGIONAL HOSPITAL**

340 Thompson Road
Webster, Mass. 01570

Telephone (508) 943-2600

March 2, 1995

Attorney Oliver C. Mitchell, Jr.
Goldstein & Manello
265 Franklin Street
Boston, MA 02110

Dear Attorney Mitchell:

Re:  Commonwealth William Restucci
     (My file #EBS95-27)

I received and reviewed the postmortem toxicology report re:
George Singleton recently.

Please note that the autopsy report (CME94-02264) is incomplete
as the report on page 4 says "neuorpathology report to follow"
and this has not been included.

I look forward to receipt of the above and the additonal
discovery previously noted.

If I can be of service to you, your colleagues, or clients please
contact me at Hubbard Regional Hospital, 340 Thompson Road,
Webster, MA 01570, phone number (508)943-4588 or 139 Newton
Avenue, North Worcester, MA 01609, digital beeper number
(508)391-7400 (rings three times, insert number you wish called
press # sign).  My fax number is 508-949-1544.

                    Sincerely,

                    Edward B. Sussman, M.D.
                    Chief of Pathology
                    Forensic Pathologist

EBS/cag



# Goldstein & Manello, P.C.

### Counsellors at Law

265 Franklin Street
Boston, Massachusetts 02110
Telephone 617 439-8900

Telecopier 617 439-8988
Telex 94 0476

March 14, 1995

Rosalind Henson Miller
Assistant District Attorney
Suffolk County District Attorney's Office
55 Court Street
Fifth Floor
Boston, MA 02108

Re:   Commonwealth
      v. Eitan Grinspon, William Restucci and Julio Nason

Dear Ms. Miller:

Thank you for forwarding me a copy of the autopsy/toxicology report regarding George Singleton relative to the above-referenced matter. However, the autopsy report notes on page 4 "neuorpathology report to follow" and this was not included. I am writing to request that you forward a copy of this report to me immediately.

Thank you for your attention to this matter.

Very truly yours,

Oliver C. Mitchell, Jr.

OCM/lj
64468@c/da/report.2



# EDWARD B. SUSSMAN, M.D.
### FORENSIC PATHOLOGY EXPERT
76 STATE ROAD · P.O. BOX 308
CHILMARK, MA 02535

508-645-3005      FAX 508-645-2250

William Restucci                    October 18, 1999
21 Fox Run #2
Marshfield, MA 02050

Dear Mr. Restucci:

RE:  Commonwealth v. William Restucci
     My file EBS95-27

Regarding your September 30, 1999 letter, please find enclosed
my file contents, including all documents received.

I did not receive the neuropathology macroscopic report.

My rates for private cases are $300/hour for all pretrial work
and $3000/day or any part thereof for requested trial appearances
plus travel.  I require a retainer check of $1500 for any work
on a private case prior to begining work.  If this is a public
counsel case, my rates are $250/hour for all pretrial work and
$2500/day or any part thereof for requested trial appearances
plus travel expenses.  I require an approved motion for funds
and a subsequent signed payment voucher on all public counsel
cases.

Sincerely,

Edward B. Sussman, M.D.



OUTPATIENT REPORT    GEORGE F

Massachusetts General Hospital          : Unit Number :    338 20 75
Boston. MA 02114                        : Birth Date   :    14 SEP 54
                                        : Age    Sex   :    39          M.

------------------------------------------------------------------------

            Copy for : MEDICAL RECORDS/CLINICS BASEMENT
202/0032  acc'd: 07/21/94 02:03          source: EW
   Specimen type: BLOOD          Coll'd: 07/21/94
Ordering MD: UNSPECIFIED

| | | | | |
|---|---|---|---|---|
| NA: | 144 | | mmol/L | 135-145 |
| K: | 4.1 | | mmol/L | 3.4-4.8 |
| CL: | 105 | | mmol/L | 100-108 |
| CO2: | 22.6 | L | mmol/L | 24.0-30.9 |
| BUN: | 15 | | mg/dl | 8-25 |
| CREAT: | 1.4 | | mg/dl | 0.6-1.5 |
| GLU: | 147 | H | mg/dl | 70-110 |
| PLASMA AMYLASE: | 46 | | units/L | 43-115 |

            Copy for : MEDICAL RECORDS/CLINICS BASEMENT
202/0033  acc'd: 07/21/94 02:09          source: EW
   Specimen type: BLOOD          Coll'd: 07/21/94
Ordering MD: P: PHYSICIAN.UNSPECIFIED: UNSPECIFIED


        * * * *   T O X I C O L O G Y   * * * *

   Specimen type: BLOOD/SERUM              Testing status: COMPLETED


| POSITIVE FINDINGS: | | | TOXIC | THERAPEUTIC |
|---|---|---|---|---|
| COCAETHYLENE | PRESENT | mcg/L | NOT DEFINED | NOT DEFINED |
| COCAINE | PRESENT | mcg/L | NOT DEFINED | NOT DEFINED |
| DIAZEPAM | 567 | mcg/L | >5000 | 100-1000 |
| ETHANOL | 2406 | mg/L | >1000 | NOT DEFINED |
| NORDIAZEPAM | 713 | mcg/L | >5000 | 100-800 |

NEGATIVE FINDINGS (DETECTION LIMIT): 4-OH GLUTETHIMIDE (1000 MCG/L)
    ACETOMINOPHEN (25 MG/L). ALPRAZOLAM (50 MCG/L). AMITRIPTYLINE (50 MCG/L)
    BUTALBITAL (10 MG/L). CARBAMAZEPINE (2 MG/L)
    CHLORDIAZEPOXIDE (200 MCG/L). CHLORPHENIRAMINE (40 MCG/L)
    CHLORPROMAZINE (30 MCG/L). CLOMIPRAMINE (50 MCG/L). CLONAZEPAM (50 MCG/L)
    CYCLOBENZAPRINE (20 MCG/L). D-PSEUDOEPHEDRINE (3000 MCG/L)
    DEMOXEPAM (200 MCG/L). DESALKYLFLURAZEPAM (300 MCG/L)
    DESIPRAMINE (50 MCG/L). DEXTROMETHORPHAN (1000 MCG/L)
    DIPHENHYDRAMINE (50 MCG/L). DISOPYRAMIDE (150 MCG/L). DOXEPIN (50 MCG/L)
    FLECAINIDE (100 MCG/L). FLUOXETINE (100 MCG/L). FLURAZEPAM (500 MCG/L)
    GLUTETHIMIDE (1000 MCG/L). IBUPROFEN (17 MG/L). IMIPRAMINE (50 MCG/L)
    ISOPROPANOL (100 MG/L). LORAZEPAM (150 MCG/L). MAPROTILINE (400 MCG/L)
    MEPERIDINE (200 MCG/L). MESORIDAZINE (500 MCG/L). METHADONE (100 MCG/L)
    METHANOL (100 MG/L). METHAPYRILENE (50 MCG/L). METHAQUALONE (1000 MCG/L)
    MEXILETINE (800 MCG/L). NORCHLORDIAZEPOXIDE (200 MCG/L)
    NORDOXEPIN (50 MCG/L). NORFLUOXETINE (100 MCG/L)
    NORMAPROTALINE (450 MCG/L). NORMEPERIDINE (200 MCG/L)
    NORPROPOXYPHENE (200 MCG/L). NORTRIPTYLINE (50 MCG/L)
    OXAZEPAM (150 MCG/L). PENTAZOCINE (1000 MCG/L). PENTOBARBITAL (6 MG/L)
    PHENOBARBITAL (11 MG/L). PHENYTOIN (5 MG/L). PROMAZINE (50 MCG/L)
    PROPOXYPHENE (200 MCG/L). PROPRANOLOL (50 MCG/L). PYRILAMINE (50 MCG/L)
    QUINIDINE (1000 MCG/L). SALICYLATE (100 MG/L). SECOBARBITAL (5 MG/L)

(4)

Massachusetts General Hospital
Boston, MA 02114

| : Unit Number : | 336 20 75 |
| : Birth Date : | 14 SEP 54 |
| : Age    Sex : | 39          M |

---

07/21/94 ----     * * * *   T O X I C O L O G Y   * * * *

Specimen type: BLOOD/SERUM                         Testing status: COMPLETED

POSITIVE FINDINGS:

| | | | TOXIC | THERAPEUTIC |
|---|---|---|---|---|
| COCAETHYLENE | PRESENT | mcg/L | NOT DEFINED | NOT DEFINED |
| COCAINE | PRESENT | mcg/L | NOT DEFINED | NOT DEFINED |
| DIAZEPAM | 567 | mcg/L | >5000 | 100-1000 |
| ETHANOL | 2406 | mg/L | >1000 | NOT DEFINED |
| NORDIAZEPAM | 713 | mcg/L | >5000 | 100-800 |

NEGATIVE FINDINGS (DETECTION LIMIT): 4-OH GLUTETHIMIDE (1000 MCG/L)
    ACETOMINOPHEN (25 MG/L), ALPRAZOLAM (50 MCG/L), AMITRIPTYLINE (50 MCG/L)
    BUTALBITAL (10 MG/L), CARBAMAZEPINE (2 MG/L)
    CHLORDIAZEPOXIDE (200 MCG/L), CHLORPHENIRAMINE (40 MCG/L)
    CHLORPROMAZINE (30 MCG/L), CLOMIPRAMINE (50 MCG/L), CLONAZEPAM (50 MCG/L)
    CYCLOBENZAPRINE (20 MCG/L), D-PSEUDOEPHEDRINE (3000 MCG/L)
    DEMOXEPAM (200 MCG/L), DESALKYLFLURAZEPAM (300 MCG/L)
    DESIPRAMINE (50 MCG/L), DEXTROMETHORPHAN (1000 MCG/L)
    DIPHENHYDRAMINE (50 MCG/L), DISOPYRAMIDE (150 MCG/L), DOXEPIN (50 MCG/L)
    FLECAINIDE (100 MCG/L), FLUOXETINE (100 MCG/L), FLURAZEPAM (500 MCG/L)
    GLUTETHIMIDE (1000 MCG/L), IBUPROFEN (17 MG/L), IMIPRAMINE (50 MCG/L)
    ISOPROPANOL (100 MG/L), LORAZEPAM (150 MCG/L), MAPROTILINE (400 MCG/L)
    MEPERIDINE (200 MCG/L), MESORIDAZINE (500 MCG/L), METHADONE (100 MCG/L)
    METHANOL (100 MG/L), METHAPYRILENE (50 MCG/L), METHAQUALONE (1000 MCG/L)
    MEXILETINE (800 MCG/L), NORCHLORDIAZEPOXIDE (200 MCG/L)
    NORDOXEPIN (50 MCG/L), NORFLUOXETINE (100 MCG/L)
    NORMAPROTALINE (450 MCG/L), NORMEPERIDINE (200 MCG/L)
    NORPROPOXYPHENE (200 MCG/L), NORTRIPTYLINE (50 MCG/L)
    OXAZEPAM (150 MCG/L), PENTAZOCINE (1000 MCG/L), PENTOBARBITAL (6 MG/L)
    PHENOBARBITAL (11 MG/L), PHENYTOIN (5 MG/L), PROMAZINE (50 MCG/L)
    PROPOXYPHENE (200 MCG/L), PROPRANOLOL (50 MCG/L), PYRILAMINE (50 MCG/L)
    QUINIDINE (1000 MCG/L), SALICYLATE (100 MG/L), SECOBARBITAL (5 MG/L)
    TEMAZEPAM (250 MCG/L), THEOPHYLLINE (8 MG/L), THIORIDAZINE (100 MCG/L)
    TRAZODONE (250 MCG/L), TRIFLUOPERAZINE (60 MCG/L)
    TRIMIPRAMINE (50 MCG/L)

07/21/94 0925     * * * *   T O X I C O L O G Y   * * * *

Specimen type: BLOOD/SERUM                         Testing status: COMPLETED

POSITIVE FINDINGS:

| | | | TOXIC | THERAPEUTIC |
|---|---|---|---|---|
| COCAETHYLENE | PRESENT | mcg/L | NOT DEFINED | NOT DEFINED |
| COCAINE | PRESENT | mcg/L | NOT DEFINED | NOT DEFINED |
| DIAZEPAM | 444 | mcg/L | >5000 | 100-1000 |
| ETHANOL | 762 | mg/L | >1000 | NOT DEFINED |
| NORDIAZEPAM | 610 | mcg/L | >5000 | 100-800 |

Continued on next page

Printed on: 07/23/94 04:29P
Confidential Patient Information - Please dispose of properly

7

------------------------------------------------------------------------

0  7/21/94 0925    * * * * *   T O X I C O L O G Y   * * * * *

  Specimen type: BLOOD/SERUM                    Testing status: COMPLETED

      PHENYTOIN                12.1    mg/L      >25         10-20

NEGATIVE FINDINGS (DETECTION LIMIT): 4-OH GLUTETHIMIDE (1000 MCG/L)
    ACETOMINOPHEN (25 MG/L), ALPRAZOLAM (50 MCG/L), AMITRIPTYLINE (50 MCG/L)
    BUTALBITAL (10 MG/L), CARBAMAZEPINE (2 MG/L)
    CHLORDIAZEPOXIDE (200 MCG/L), CHLORPHENIRAMINE (40 MCG/L)
    CHLORPROMAZINE (30 MCG/L), CLOMIPRAMINE (50 MCG/L), CLONAZEPAM (50 MCG/L)
    CYCLOBENZAPRINE (20 MCG/L), D-PSEUDOEPHEDRINE (3000 MCG/L)
    DEMOXEPAM (200 MCG/L), DESALKYLFLURAZEPAM (300 MCG/L)
    DESIPRAMINE (50 MCG/L), DEXTROMETHORPHAN (1000 MCG/L)
    DIPHENHYDRAMINE (50 MCG/L), DISOPYRAMIDE (150 MCG/L), DOXEPIN (50 MCG/L)
    FLECAINIDE (100 MCG/L), FLUOXETINE (100 MCG/L), FLURAZEPAM (500 MCG/L)
    GLUTETHIMIDE (1000 MCG/L), IBUPROFEN (17 MG/L), IMIPRAMINE (50 MCG/L)
    ISOPROPANOL (100 MG/L), LORAZEPAM (150 MCG/L), MAPROTILINE (400 MCG/L)
    MEPERIDINE (200 MCG/L), MESORIDAZINE (500 MCG/L), METHADONE (100 MCG/L)
    METHANOL (100 MG/L), METHAPYRILENE (50 MCG/L), METHAQUALONE (1000 MCG/L)
    MEXILETINE (800 MCG/L), NORCHLORDIAZEPOXIDE (200 MCG/L)
    NORDOXEPIN (50 MCG/L), NORFLUOXETINE (100 MCG/L)
    NORMAPROTALINE (450 MCG/L), NORMEPERIDINE (200 MCG/L)
    NORPROPOXYPHENE (200 MCG/L), NORTRIPTYLINE (50 MCG/L)
    OXAZEPAM (150 MCG/L), PENTAZOCINE (1000 MCG/L), PENTOBARBITAL (6 MG/L)
    PHENOBARBITAL (11 MG/L), PROMAZINE (50 MCG/L), PROPOXYPHENE (200 MCG/L)
    PROPRANOLOL (50 MCG/L), PYRILAMINE (50 MCG/L), QUINIDINE (1000 MCG/L)
    SALICYLATE (100 MG/L), SECOBARBITAL (5 MG/L), TEMAZEPAM (250 MCG/L)
    THEOPHYLLINE (8 MG/L), THIORIDAZINE (100 MCG/L), TRAZODONE (250 MCG/L)
    TRIFLUOPERAZINE (60 MCG/L), TRIMIPRAMINE (50 MCG/L)


                    ----- MISCELLANEOUS -----

7/21 ---- SGOT (ALTERNATE METHOD): 72 H U/L (27-47)
7/21 ---- TOTAL BILIRUBIN (ALTERNATE METHOD): 0.4 mg/dl (0.0-1.0)
7/21 ---- ALK P'TASE (ALTERNATE METHOD): 73 U/L (50-136)
  Drs. PHYSICIAN NOT SPECIFIED, UNSPECIFIED.

Printed on: 07/23/94 04:29P                      End of report.
Confidential Patient Information - Please dispose of properly
COPY FOR: MEDICAL RECORDS/CLINICS BASEME  H = higher, L = lower than normal



10

Sixth Amendment of the United states constitution guaranteed to all.

4) The petitioner has no other available means to obtain discovery in state court, the Writ of mandamus is appropriate in this extraordinary situation where the lower courts have refused the preformance of there duties for the protection of the petitioners constitutional rights and his rights to due process of law.

5) The petitioner suffers a manifest injustice if the Writ of Mandamus is not granted.

**CONCLUSION**

Wherefore, The petitioner prays that this Honorable Court grant this Writ of Mandamus and order and or compel the Appeals court to order the district attorneys office for suffolk county, to deliver, within 7 days a copy of full and complete discovery in case 94-11221 including the "nero pathology report", to William Restucci at Norfolk Prison, 21 Clark street, PO, Box 43, Norfolk,Mass, 02056 and or any other relief or further relief as this Honorable Court may seem Just and proper.

Date, August 28 2001          Respectfully submitted by

William restucci / pro se

PO. Box 43, Norfolk, Mass,02056

11

# APPENDIX

Judgement in Suffolk Superior Court
by Justice Volterra ........................... Exhibit A

Judgement by the Massachusetts Appeals
court. case 2000-P-0604 ....................... Exhibit B

Letters from the District Attorneys
office and the petitioner concerning public
information request ........................... Exhibit C

Copy of blood and saliva analysis of
William Restucci, Julio Nason, And George
Singleton ..................................... Exhibit D

Copy of the commonwealth's
potential witness list ........................ Exhibit E

Letters from the Forensic
pathology expert,and defense
counsel ....................................... Exhibit F

Judgement by Justice Robert Banks ............. Exhibit G



witness list; and seven police reports. At $.20 per page, the cost to reproduce these documents is $3.00. The cost for the time taken to review the file and to redact confidential information (3 hours) is $45.00. This office will copy and send these documents to you once you have provided this office with its cost to locate and reproduce the documents, a total of $48.00 made payable to the Suffolk County District Attorney's Office.

Sincerely,

RALPH C. MARTIN, II
DISTRICT ATTORNEY

By: Karen A. Palumbo
Assistant District Attorney
For the Suffolk District

William Restucci / pro se
PO. Box 43, Norfolk,
Massachusetts 02056

June 4 2001

Karren Palumbo
Assistant District Attorney
One Bulfinch Place,
Boston Massachusetts,
02114-2997

Re; Public records request

Dear Mrs Palumbo,

In regards to my request for public records, enclosed
is the forty eight dollars you asked for for the records
D.N.A. results from my blood and saliva, the prosecution
witness list, and seven police reports as contracted (see
attached).

Please note that I reserve the right to raise and do
not waive any and all objections, and privileges.

I am also informing your office that material that is
denied to me by both your office, and my ex-counsel Oliver
Mitchell prevents me from presenting an adequate defense
in violation of the Sixth and Fourteenth Amendments of the
United states Constitution and denies me due process of law.

Because I am pro se in this matter should not make a
difference, I should be allowed full and complete discovery
as a lawyer would have.

It also seems that, because I cannot afford a lawyer
because of my poverty, and I can not get one appointed to
me, I am being treated differently by the courts.

In closing, I thank you, and any further help that you
can give me would be greatly appreciated because I am not
guilty of any crime in the matter of Commonwealth vs, William
Restucci, Number 94-11221 and I should not be in prison.

Very truly yours,

William Restucci

*The Commonwealth of Massachusetts*

DISTRICT ATTORNEY OF SUFFOLK COUNTY
RALPH C. MARTIN, II

One Bulfinch Place
Boston, MA 02114-2997

Telephone: (617) 619-4000
Fax: (617) 619-4009

July 27, 2001

William Restucci
P.O. Box 43
MCI-Norfolk
Norfolk, MA  02056

Re:  Public Records Request

Dear Mr. Restucci:

Enclosed please find a copy of the D.N.A. results from your blood and saliva, a copy of the prosecution's witness list, and copies of seven police reports (with private information redacted pursuant to Mass. Gen. L. c. 4, § 7, cl. (26)(c)), per your request dated April 4, 2001.

Sincerely,

Karen A. Palumbo
Assistant District Attorney

E-1

Grant this writ petitioners
and permit decisions of important
constitutional questions are involved
Smith
where petitioners petitioners habeas
corpus 28 USC 2254) was impaired in
a great respect.



*The Commonwealth of Massachusetts*

### DISTRICT ATTORNEY OF SUFFOLK COUNTY
### DANIEL F. CONLEY

Office of the Legal Counsel
One Bulfinch Place
Boston, MA 02114-2997

Telephone: (617) 619-4000
Fax: (617) 619-4169

February 13, 2003

Mr. William Restucci
2 Clark Street
P.O. Box 43
Norfolk, MA  02056

Re:    Public records request #030129
       *Commonwealth v. Restucci*, No. SUCR1994-11221

Dear Mr. Restucci:

I am writing in response to your public records request of January 29, 2003.  The Criminal Offender Record Information Act, G.L. c. 6, § 172 prohibits this office from disclosing another person's criminal record to you.  *See* G.L. c. 4, § 7, cl. 26(a).  Furthermore, this office does not see how the document requested could constitute exculpatory evidence.  Accordingly, your request is denied.

Sincerely,

Joseph M. Ditkoff
Deputy Legal Counsel



( E )

# Commonwealth of Massachusetts

### Appeals Court for the Commonwealth

### At Boston,

In the case no. 97-P-1840

COMMONWEALTH

_vs._

WILLIAM RESTUCCI.

Pending in the Superior

Court for the County of Suffolk

    Ordered, that the following entry be made in the docket:

Orders denying
defendant's motion for
release from unlawful
restraint, amended motion
for release from unlawful
restraint, and petition
for writ of habeas corpus
affirmed.

NOTE:

The original of the within rescript
will issue in due course, pursuant
to M.R.A.P. 23

APPEALS COURT

By the Court,

_Ashley Ahern_ ,Clerk

Date
    February 1, 1999

( A )

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

97-P-1840

COMMONWEALTH

<u>vs</u>.

WILLIAM RESTUCCI.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 1:28</u>

There was no abuse of discretion or other error in the Superior Court's denial of the defendant's various motions for the reasons set out in the Commonwealth's brief.  The orders denying the defendant's motion for release for unlawful restraint, his amended motion for release from unlawful restraint, and his petition for writ of habeas corpus are affirmed.

<u>So ordered</u>.

By the Court, (Warner, C.J.,
Flannery / & Beck, JJ.),

*Ashley Ahearn*
Clerk

Entered: February 1, 1999.

_____

/ Justice Flannery participated in the deliberation of this case prior to his death.

# Supreme Judicial Court for the Commonwealth of Massachusetts
### 1412 Courthouse, Boston, Massachusetts 02108
### (617) 557-1020


William Restucci
P.O. Box 43
Norfolk, MA 02056


RE:  Docket No. FAR-10463

**COMMONWEALTH**
**vs.**
**WILLIAM RESTUCCI**


### NOTICE OF DENIAL OF F.A.R. APPLICATION

Please take note that the above-captioned Application for Further Appellate Review has been considered by the Court and is denied.

                                        Jean M. Kennett, Clerk

Dated: March 26, 1999

To:  Jane A. Sullivan, Esquire
     William Restucci



**Greta A. Janusz**

Attorney at Law
179 William Street
New Bedford, MA 02740
Tel. (508) 993-6499

November 13, 1997

Denise Simonini
C.P.C.S.
470 Atlantic Ave
Suite 700
Boston, MA  02210

RE:  Screening Assignment
     William Restucci
     NAC # C 1830441-4

Dear Ms. Simonini:

Please be advised that I have reviewed legal documents and have commenced investigation in reference to the above-named individual.  I met with Mr. Restucci at M.C.I. Norfolk on October 21, 1997.  Prior to meeting with Mr. Restucci, I had reviewed specific documents he had attached to some of his motions, specifically, Affidavits of witnesses whom support the contention that he was coerced into pleading guilty and that said plea was involuntary pursuant to the applicable standards.  I examined the allegations of coercion when meeting with the two individuals who witnessed the "coercive acts" and who became part of the coercion, at the urging of both trial counsel and counsel for one of the co-defendants, Julio Nason.

After interviewing them at my law office, it was clear that they had a very detailed and vivid memory of the two day trial which culminated into the guilty plea by Mr. Restucci.  In addition, Mr. Restucci's ex-wife supported the allegation and informed undersigned counsel that she met with Mr. Restucci at the Nashua Street Jail the night before the plea. She informed me that she had urged Mr. Restucci to plead guilty at the request of trial counsel. Mr. Restucci adamantly maintained that he was innocent and would not plead guilty.  She further indicated that he was in a state of confusion, depression, anxiety, and was very noncommittal in reference to his tendering a plea.

In addition to the fact that I believe the defendant has a potentially meritorious claim that his plea was coerced and therefore involuntarily rendered, there is a question as to the lack of investigation and omissions of trial counsel to meet with several percipient witnesses. In speaking to Mr. Restucci's ex-wife

and ex-mother-in-law, I was able to determine that they met with several witnesses who were with Mr. Restucci prior to the offense, that witnessed the two other co-defendants at that time, and their actions immediately prior to the assault and battery which killed Mr. Singleton. One reluctant witness observed the altercation.

Also, I understand that there was extremely weak testimony from two security officers who were unable to make any direct observations of Mr. Restucci and the co-defendants. Furthermore, the police report contains statements made by co-defendant, Julio Nason, that Mr. Restucci was only trying to prevent the attack upon Mr. Singleton and was not injuring Mr. Singleton. There was evidence indicating that Mr. Restucci was friendly with the deceased, as opposed to the other co-defendants who had no relationship with him at all. None of this evidence was obtained pre-trial.

Also, further investigation by family members revealed that one of the co-defendants was highly intoxicated prior to the incident and was ordered to leave the bar. None of these witnesses were placed on the witness list which raises serious questions of inadequate preparation and subsequent coercion by Mr. Restucci's trial counsel, and trial counsel for co-defendant Julio Nason, which leads itself to sufficient grounds to support a Rule 30 Motion.

Please be advised that I would be willing to accept the appointment and would request that a NAC be sent to my attention so that I may proceed accordingly. Please feel free to contact me if you should have any questions concerning the above.

Very truly yours,

Greta A. Janusz, Esq.

GAJ/dc
cc:  William Restucci

' POLICE                                                    *HOMICIDE INFORMATION SHEET*

*otal to Date: H47/94    CC#: 41336774    Area: A-1 Day: THU · Date: 07/21/94    Time: 01:20A*

*.eather/Temperature: HOT/HUMID           Lighting Conditions: ARTIFICIAL*

## VICTIM INFORMATION

*Name: SINGLETON, GEORGE F.    AKA:*              *DOB: 09/14/54 M/S:M    Age:39 Race: W/N/M*

*Address: 17 COURT STREET           Location of Incident: 460-466 COMMERCIAL STREET*

*Extent of Injuries: TRAUMA - BODY      Pronounced By: DR. BUTLER, MGH       Time: 13:20*

*Medical Examiner:                Weapons: HANDS/FEET          Received: NO*

*Family Member Notified:                By Whom:*

*Warrant(s) Outstanding:                        Prior Record: NO*

## DEFENDANT INFORMATION

*Name: RESTUCCI, WILLIAM    AKA:         DOB: 01/01/60 M/S:    Age:34 Race: W/N/M*

*Address: 19 CLARK STREET, NORTH END    Desc: 6'1" 230 LBS HEAVY BUIL Occupation:*

*Is Defendant in Custody: YES  Where:      Is Warrant to be Sought: NO   What Court:*

*Prior Record:                Photo#:        BK#17274*

## TECHNICAL SERVICES

*b .istic-an:              Date:   /  /   Time:   :    BU#:*

*Photography:  FOILB          Date:   /  /   Time:   :    Fingerprint:*

*Chemist:                Date:   /  /   Time:   :    Crime Lab Case#:*

## CASE INFORMATION

*Homicide Detectives: SGT DET MAHONEY, DET BRAZIL    Area Officers:*

*Police Notified By:                    Address:*

*Status of Case: ARREST       Defendant: WILLIAM RESTUCCI  No Defendant: ONE (1)*

*Names of All DA's Assigned:*

*SUMMARY OF CASE*

> *On 7/21/94, at 1:20am, R/C to respond to 460-466 Commercial Street,
> regarding a man lying in the ground.  The victim, George F. SINGLE-
> TON, was transported to Mass. General Hospital and brought to ICU.
> On 7/21/94, at 1:30pm, the victim was pronounced dead by Dr. Butler.
> ON 7/21/94, the defendant William RESTUCCI, was arrested and charged
> with murder BK#17274*

*Jse the following codes H-Homicide; A-Accidental; N-Natural; V-Vehicular; P-Police
U-Undetermined for further investigation; then follow Code Letter with number to date.*

55

*Handwritten left margin (rotated):* 3/10/00 This court declines to act on this, now turn years. R. Crim. P. 30(R) motion to withdraw guilty plea. The Massachusetts Appeals Court has already dealt with the contention of the defendant. See Commonwealth v. William Restucci, 46 Mass. App. Ct. 1110

## COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF THE TRIAL COURT

SUFFOLK, ss.                    SUPERIOR COURT DEPARTMENT
                                CRIM. NOS. 94-11221

COMMONWEALTH

-Vs-

WILLIAM RESTUCCI

### DEFENDANTS MOTION FOR NEW TRIAL
### (Pursuant to Mass. R. Crim. P. 30(b))

Now comes the Defendant, William Restucci, and respectfully moves this

Honorable Court grant his motion for new trial pursuant to Mass. R. Crim. P.30 (b). As

grounds therefore, Defendant relies upon the attached memorandum of law in support of

his motion.

**WHEREFORE,** Defendant prays this Honorable Court grant the relief sought herein.

Respectfully submitted,
William Restucci,
By his attorney:

Greta A. Janusz, Esq.
179 William Street
New Bedford, MA 02740
(508) 993-6499
BBO # 549860

DATED:

*Exhibit A*

**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF THE TRIAL COURT**

SUFFOLK, ss.                              **SUPERIOR COURT DEPARTMENT**
                                          **CRIM. NOS.  94-11221**

**COMMONWEALTH**

-Vs-

**WILLIAM RESTUCCI**

**DEFENDANTS MOTION FOR NEW TRIAL**
**(Pursuant to Mass. R. Crim. P. 30(b))**

Now comes the Defendant, William Restucci,  and respectfully moves this

Honorable Court grant his motion for new trial pursuant to Mass.  R.  Crim. P.30 (b).  As

grounds therefore, Defendant relies upon the attached memorandum of law in support of

his motion.

**WHEREFORE,** Defendant prays this Honorable Court grant the relief sought herein.

Respectfully submitted,
William Restucci,
By his attorney:


Greta A. Janusz, Esq.
179 William Street
New Bedford, MA 02740
(508) 993-6499
BBO # 549860

DATED: